**UNITED STATES of America**

v.

**Nicholas FORLANO, Petitioner.**

United States District Court
S. D. New York.

Feb. 24, 1965.

See also 2 Cir., 319 F.2d 617.

Abraham H. Brodsky, New York City, for petitioner.

Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, for the United States; Thomas F. Shea, Asst. U. S. Atty., of counsel.

WYATT, District Judge.

This is a motion by Nicholas Forlano for an order vacating and setting aside his judgment of conviction in this Court on April 10, 1935.

■■ The sentence contained in the judgment has been completely served. Relief in such a situation cannot be had under 28 U.S.C. § 2255 because the applicant is not "in custody" under the sentence. United States v. Bradford, 194 F.2d 197, 200 (2d Cir. 1952). But a motion for the common law writ of error coram nobis properly invokes the jurisdiction of this Court to set aside the judgment of conviction, even where the sentence has been fully served. United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954). Our Court of Appeals has in fact treated the present motion of Forlano as a proper application for a writ of error coram nobis and within the Court's jurisdiction. 319 F.2d 617, 618 (2d Cir. 1963).

An indictment was handed up to this Court on March 22, 1935 (C 96/786) charging Forlano and another defendant, Earl Edwards, in six counts with offenses against the narcotic laws. Edwards was also charged (but not Forlano) in a separate indictment (C 96/787) of six counts.

Forlano, according to the records, was arrested on March 13, 1935. The Commissioner set bail at $3,000. This was later reduced on March 22 to $2,000 (SM 111). Forlano made this bail by surety company bond and was released about March 23, 1935.

On March 25, 1935, Forlano pleaded guilty to all six counts of the indictment (C 96/786) against him and Edwards. The record shows that his plea was taken by Judge Hincks, then a District Judge for the District of Connecticut and sitting in this Court as a visiting judge.

On the same day—March 25, 1935—Edwards pleaded not guilty before Judge Hincks to all six counts of the two indictments against him.

On April 3, 1935, Edwards changed his plea to guilty on all counts of the two indictments against him and he was sentenced on both indictments the same day.

On April 3, 1935, the record shows that sentencing of Forlano was adjourned to April 10, 1935 and he was referred to the Probation Officer.

On April 10, 1935, sentence was imposed on Forlano and judgment of conviction signed by Judge Caffey of this Court. The sentence was 18 months imprisonment on counts 1 and 2 (to run concurrently); two years imprisonment on counts 3, 4, 5 and 6 (to run concurrently with each other and consecutively with the sentence on counts 1 and 2); execution of prison sentence on counts 3, 4, 5 and 6 was suspended and Forlano placed on probation for 2 years beginning at his release from prison; there was a

fine of $1 on counts 3 and 6, payment suspended. In short, Forlano had to serve a maximum of 18 months and began serving this sentence on the day of sentence.

The present motion was served and filed on November 2, 1962—more than 27 years after imposition of sentence. The claim of Forlano is that he "pleaded guilty to all six counts of the said indictment without the advice of counsel and without having intelligently waived counsel" (petition, para. 7).

Judge Dawson held a hearing and on December 10, 1962 denied the motion (D.C., 212 F.Supp. 77).

The Court of Appeals reversed (319 F.2d 617) because the basis for the denial by the District Court was "uncertain", because the District Court had not been referred to Carnley v. Cochran, 369 U.S. 506, 514–516, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962) for the "governing legal principles", and because "much probably relevant evidence was mentioned but not properly established" (319 F.2d at 620).

█ It is clear from the Court of Appeals opinion that the burden is on Forlano to show that he was not represented by counsel at the time of pleading guilty and at the time of sentencing. If Forlano is able to carry this burden, the judgment of conviction must be set aside.

A hearing was held by me on November 4, 1964 and evidence received. Judge Hincks and Judge Caffey were then both dead. I reach the same conclusion as Judge Dawson: that Forlano has not sustained his burden.

The case for movant is solely his own testimony plus the diary and testimony of David M. Markowitz, Esq., who I find acted as attorney for movant in the 1935 proceedings in this Court.

Forlano testified that he remembered appearing in this Court, then in the old Post Office Building, on March 25, 1935 (SM 38); that he was not "at that time" represented by an attorney, namely, when he "appeared in court for arraignment" (SM 39); that he does not "remember" the Court at that time advising him that he "had a right to get a lawyer" (SM 39); that he did not have any money at that time to hire a lawyer (SM 40); that he was then "just 21" (SM 40); that he does not remember whether he intended to waive his right to have a lawyer but that he "must have" (SM 41; later he testified that this was not his intention, SM 43); that no lawyer was with him when he pleaded guilty on March 25, 1935; that he does not "remember" telling the Court that he didn't want a lawyer (SM 41); that when sentenced on April 10, 1935 he was not represented by an attorney, was not told by the Court that he could have an attorney assigned, and was not asked if he had an attorney.

On cross-examination Forlano testified that he thought he was pleading guilty to possession of narcotics and when he pleaded guilty was told by some "agent" that he "would get a six months probation on a suspended sentence" (SM 57); that he was not aware he could be sent to jail after pleading guilty (SM 58). This testimony is not believed. It also seems clear from his testimony (for example, SM 52–55) that Forlano understood the narcotic charges against him.

On cross-examination Forlano testified that when he was "maybe sixteen years old" he pleaded guilty to a charge in the state court and was then represented by a lawyer and that later in 1935 there was a case in Special Sessions where he was also represented by a lawyer (SM 60, 61). As to the 1935 Special Sessions case, it is confirmed by other evidence that he was represented by a lawyer, as will later appear.

On redirect examination, movant denied that he knew a lawyer named Morris Rappaport or had ever heard the name.

█ Having in mind that Forlano waited some 27 years to attack his 1935 conviction and then only after being indicted in New York County with consequent motive to avoid sentencing as a multiple offender, I have given the record that "closest scrutiny" which the Court of Appeals directed (319 F.2d at 620).

I find that no lawyer was physically present in the courtroom with Forlano either on March 25, 1935 when he pleaded guilty or on April 10, 1935 when he was sentenced. I find, however, that at the time he pleaded guilty Forlano did have a lawyer, David M. Markowitz, Esq., and that before the date of his sentence Forlano also had another lawyer, Morris Rappaport, Esq. I find that, although neither of these lawyers was in court at the time of the plea of guilty or of sentence, Forlano did have the "Assistance of Counsel for his defence" under the Sixth Amendment. I find, based on evidence as to the practice of the Court in 1935, that at the time of plea and of sentence, Forlano was asked if he had an attorney and also whether he wanted the Court to assign an attorney to represent him, if he had no money himself to secure an attorney. I find that Forlano, voluntarily and intelligently, waived the presence of any lawyer with him in the courtroom.

Certain writings at the time seem to me to be more indicative of the truth than the present recollection of any witness—not limited to movant—as to events nearly thirty years ago.

Mr. Markowitz had no recollection of any of the events of 1935 (SM 8, 22, 24, 32, 33); his testimony was as to his custom at the time and the meaning of his diary entries based on his then methods. The diary entries, supplemented to some extent by his testimony, seem to me significant. The diary was described as a "master diary" kept in Markowitz' office but consulted by all of his associates to guide court appearances (SM 23-24).

On February 27 (all dates are in 1935 unless otherwise indicated) appears an entry:

"SSM—Forlano—Leccerra" in red pencil followed by indecipherable initials and "3/8" in black pencil.

The red pencil notation refers to a court engagement; all such were put in the diary *in advance* in red pencil as a reminder (SM 10, 20). This notation means that on February 27 Markowitz appeared in the Court of Special Sessions, Manhattan for Forlano and Leccerra and the matter was put off to March 8. The matter was an arrest on February 6 of Forlano and Leccerra for a violation of a narcotics law of the state; Forlano had been released on $500 bail (Ex. E). There is no question but that Markowitz represented as lawyer on this charge Forlano and Leccerra; Forlano testified that he did not remember this and added: "I think there was another defendant in the case and he brought the lawyer in" (SM 61). It is doubtful that the other defendant brought in the lawyer because in the first diary entry above the names of the two defendants appear and that of Forlano is first. In any event, the lawyer was acting for both defendants: Forlano as well as Leccerra.

On March 8, the diary entry, all in red pencil, is:

"SSM—Lecerra &
Forlano          2/27     3/15."

This means that Markowitz appeared in Special Sessions on March 8 and the matter was put off to March 15; the "2/27" refers to the last time the case was on the calendar.

On March 13, Forlano was arrested on the federal narcotics charge on which came the conviction he now seeks to set aside.

On March 14, appears an entry in black pencil in the diary:

"call re Nicholas Forlano          OK".

According to Markowitz, this meant that he made a telephone call that day about Forlano; he could not remember the call (SM 33). In the context, it seems reasonable to conclude that it was about the federal case; the time is the day after the arrest; the state court charge was minor and not pressing, adjournments being regularly obtained.

Markowitz filed an appearance as attorney for Forlano and Edwards in the federal case. The exact date when this appearance was filed does not appear but it must have been before the return of the indictment (March 22) because it ap-

pears on the "Criminal Docket" of the United States Attorney on a page (Ex. I) with the first entry on March 22 and with the notation "Carried from Commissioner's Docket W4 page 168".

On March 15 appears this entry in red pencil in the diary:

"SSM    Leccerra &

Forlano            3/8    3/26".

This means that Markowitz appeared for Leccerra and Forlano in Special Sessions and the matter (last on the calendar "3/8") was put off to March 26.

On March 25 Forlano pleaded guilty in this Court. The diary entry for that day is:

"USED—Forlano    deft    Guilty".

The "USED—Forlano" is in red pencil and indicates a court engagement for Markowitz on that day for Forlano. According to practice, it was put in the diary *before* March 25 as a reminder for that day. Of course, the "USED", referring to the Eastern District is a mistake; Forlano's case was in this Court, but the mistake was undoubtedly due to the fact that Markowitz at the time had his office in the Eastern District (SM 34) although he practiced also in this Court (SM 33).

The other words of the March 25 entry, "deft Guilty", are in black pencil.

After study of the diary and of the Markowitz testimony, I conclude that the word "deft" in the March 25 entry was also put in the diary *in advance* and means that an understanding had been reached between client (Forlano), who was at liberty, and attorney (Markowitz) that the client would appear in court alone. I base this conclusion on the practice of Markowitz to indicate in advance in black pencil in the location where "deft" appears what lawyer in his office would cover that particular court engagement: "When it has been assigned out between myself and my assistant the names are put down *ahead of time* as to who is going to cover on that particular day" (SM 9; emphasis supplied). Markowitz had an assistant, Sam Cohen; on the diary page for March 25, "Dave" and

"Sam" appear in black pencil on the same line with two other court engagements each, and in the same location as "deft"; other examples of advance assignments to "Dave" and "Sam" can be seen on the diary pages for January 4, 14 and 15; March 20; April 3, 4, 5. Forlano is not the only litigant with whom Markowitz worked it out that the litigant would himself handle the court engagement. For example, on April 5 when "Dave" and "Sam" were scheduled for other court appearances, there is an entry "4B—Nathanson & Brassler" in red pencil followed by "deft" in black pencil and then in red "3/15 4/19". This means, as it seems to me, that since "Dave" and "Sam" had to be elsewhere "deft" would handle the court engagement and the matter was then adjourned to April 19.

There is nothing in the record to indicate when "guilty" in black pencil was written in the March 25 entry, but whether before or after the guilty plea was in fact entered by Forlano, it indicates that Markowitz was acting as attorney to Forlano. If made before March 25 and at the time when "deft" was put down, it means that in consultation with Markowitz it was understood that Forlano would appear alone and plead guilty. If made after the guilty plea was entered, it means that a report was made to Markowitz of what had occurred at the plea.

In either event, the entry is inconsistent with Forlano's testimony that he had no lawyer and had no money "to hire a lawyer" (SM 40). If Markowitz was not acting as his lawyer, why should Markowitz enter the fact of his guilty plea in the diary?

Moreover, the notation on the indictment for March 25 as to Forlano—a notation in the handwriting and with the initials of Jonas Johnson, then Clerk in the criminal pleading part—is: "Apl 2, 1935 for sentence". Sure enough, this date is entered, as we shall see, in Markowitz' diary. If it had been true, as Forlano testified, that he had no money to hire a lawyer, why was Markowitz following the case so closely? And why indeed was Markowitz so closely following

the Special Sessions case against Forlano, a much less serious affair?

On March 26 there is a diary entry in red pencil:

"SSM   Lacerra & Forlano      4/4".

This means that on March 26 Markowitz appeared for Forlano (and Leccerra) in Special Sessions where the matter was put off to April 4.

On April 2 there is a diary entry in red pencil:

"USED   Forlano      ————".

This means that Markowitz thought that he had a court engagement on April 2 for the sentencing of Forlano in this Court.

The record does not show what happened in this Court on April 2 but it is evident that the sentencing of Forlano was postponed to April 3, probably because there was about to be a change of plea by his co-defendant Edwards.

On April 3 before Judge Caffey in this Court Edwards changed his plea in respect of the two indictments—that is, this indictment C 96/786 against Edwards and Forlano and C 96/787 against Edwards alone—from not guilty to guilty. Edwards was then sentenced on the same day.

In respect of Forlano, however, the notation in the Court records is:

"Referred to Probation officer— Sentence Adj'd to Apl 10, 1935 Bail Cont'd".

On the same day Forlano went to the Probation Officer, Elbert Williams, for an interview.

Mr. Williams was produced at the hearing and testified as a witness. He had not testified at the hearing before Judge Dawson and this drew an unfavorable comment from the Court of Appeals (319 F.2d at 620).

I fully accept the testimony of Mr. Williams. He had been appointed a Probation Officer on February 15 and Forlano was his first narcotics case. For that reason, he remembered the case very well (SM 71, 75); he not only interviewed Forlano but he also went to his home

and to the state courts where Forlano had made a criminal record (SM 70, 71). Mr. Williams interviewed Forlano on April 3 and at the time in his (Williams') handwriting filled in Probation Form 1. Among other things, he asked Forlano for the name of his attorney. Forlano told him "Morris Rappaport" and Mr. Williams put this name down on the form under the heading "Defense attorney, and address". Morris Rappaport was a lawyer in New York, admitted in the First Department in 1931 and who was practicing in 1935 (SM 125, 126) and "active in this Court for a long time" (SM 73a). He was disbarred in 1939, later moved to Cleveland and died on October 31, 1964 at a time when the government was trying to arrange for his testimony at the hearing on this motion before this Court (November 4, 1964). Mr. Williams knew Rappaport and had seen him in connection with other cases (SM 70, 73a). Mr. Williams not only knew Rappaport but Rappaport specifically talked to Mr. Williams about Forlano, and "definitely" stated "that he was representing Mr. Forlano" (SM 71); Rappaport pleaded on behalf of Forlano, pointing out that Forlano was only 21, had lost his father some years before, and that the family was receiving public assistance. Rappaport asked Mr. Williams to recommend a suspended sentence.

Markowitz denied knowing Rappaport (SM 34, 35). Forlano denied knowing Rappaport and denied having given his name to Mr. Williams (SM 63, 64), but the record made on April 3 in the handwriting of Mr. Williams is more persuasive than any unaided recollection nearly thirty years after the event.

It may be asked why, if Markowitz was acting as a lawyer for Forlano (as I find that he was), there was any need of Rappaport as another lawyer. There could be many explanations for this, however. It could be that it was believed that Rappaport, having been "active in this Court for a long time" (SM 73a) and personally acquainted with Probation Officer Williams, would be an effective

person to urge clemency. In any event, it seems clear that Rappaport was acting as a lawyer for Forlano, in addition to Markowitz.

On April 4, there is an entry in the Markowitz diary:

"SSM—Lacerra (sic) &
Forlano            Sam    4/12".

The entry is all in red pencil except "Sam". The entry means that it was agreed in advance that Sam Cohen, an assistant of Markowitz, would go to court on April 4 for Leccerra and Forlano, that he did so, and that the matter was put over until April 12.

On April 10 Forlano was sentenced by Judge Caffey. There had been a pre-sentence report by the Probation Officer. I find that there was no lawyer present with Forlano in court at the time of sentence. On the same day, April 10, Forlano began service of his sentence (return of Marshal on the commitment).

On April 12 appears this entry in the Markowitz diary, all in red pencil:

"SSM—Lacerra (sic) & Forlano
        4/4    F—DOR    L—not G".

This means that Markowitz appeared on April 12 in Special Sessions and that the charge there against Forlano and Leccerra was disposed of: Forlano was "dismissed on own recognizance" (a state court equivalent of a nolle prosequi) and Leccerra was found not guilty. This seems natural so far as Forlano was concerned at least. The narcotics charge in Special Sessions was relatively minor and Forlano had already begun service of an 18 months narcotics sentence in this Court.

But the Special Sessions charge and the continuous, active representation of Forlano by Markowitz in that court on that charge is inconsistent with the testimony of Forlano on this motion that he had no money to hire a lawyer (SM 40). Moreover, Forlano was able to, and did, raise bail of $500 at the time in Special Sessions and $2,000 in this Court.

In addition, there was testimony as to the practice of the Court at the time. Jonas Johnson was in 1935 chief clerk in the criminal division of the office of the Clerk of this Court. He was present in Court when Forlano pleaded guilty before Judge Hincks and when he was sentenced by Judge Caffey. The entries on the indictment as to these matters are in the handwriting of Mr. Johnson. An affidavit of Mr. Johnson was submitted on the first hearing to Judge Dawson but Mr. Johnson, who retired in 1961, did not testify before Judge Dawson. The Court of Appeals declared that the affidavit should have been "given little, if any weight" and that testimony by Mr. Johnson "would have been a more compelling refutation of the defendant's account of what took place" (319 F.2d at 619).

Mr. Johnson testified at the hearing before me. He testified to the procedure in the "pleading and sentencing part" (SM 92) in 1935 as follows (SM 93):

"Well, when a defendant was called, either I or the Court, the Judge, would ask the defendant if he had an attorney. Sometimes the defendant would say he didn't want an attorney, he didn't need it, and the plea would be taken, although the Judge might—I would say, did, advise him that he should have an attorney appointed by the Court and it wouldn't cost him anything. And sometimes he would say—the defendant would say, 'I don't need it.' But most times, I would say, the defendant took the Judge's advice and accepted an attorney appointed by the Court.

"Q   And how would the Court appoint an attorney?   A   Well, he would ask—when I was here, he would ask me who could he appoint. And I would look around the court and give him maybe two, three or four names. Sometimes he would see an attorney in court that he knew and he would assign him."

And later he testified (SM 96):

"Q   Well, if a defendant is brought before you, the defendant would be brought before you and you would read the—   A   No. I

would first find out if he had an attorney.

"Q Did you do that in all cases, sir? A As far as my recollection is concerned—I mean, I have given it an awful lot of thought—I would have to say Yes. I tried to think that maybe it did not happen, but I cannot. And I can only go according to my recollection.

"And I have given it a lot of thought, because I have testified in a few cases, and I can only say, as I stated, that he was asked if he had an attorney and whether he wanted the Court to assign an attorney.

"* * *

"Q Now, was that the uniform practice of all the judges? A That was the practice at that time, and that was the practice before I became the chief of the criminal division.

"Q Was it the practice of the judge to ask—was it the practice of each and every judge to ask if a defendant had counsel? A As far as my recollection, it was either the judge or myself.

"Q And it never varied in any single case? A To the best of my recollection, I would say no, but that is the best I can give.

"Q You are not sure, are you? A I cannot be sure in a thousand cases, but I would say to almost a certainty that every defendant was asked if he had an attorney, but I have no recollection of this case or any case."

On the basis of the foregoing, I find that Mr. Forlano has not sustained the burden of showing that he lacked the assistance of counsel in 1935.

■ True, there was no counsel physically present in court with him at the time of plea or sentence, but this was his decision. He did have the assistance of counsel and he was then free on bail to consult counsel. The physical appearance in court of counsel is form and not substance when the "assistance of counsel"

has been given outside of court. There is an interesting, long contested and instructive litigation on this point, culminating in the decision of United States v. Holton, 227 F.2d 886 (7th Cir. 1955), cert. denied, 350 U.S. 1006, 76 S.Ct. 650, 100 L.Ed. 868 (1956). The Court of Appeals quoted with evident approval the comment of a state court judge when the case was before him (227 F.2d at 892):

"The actual appearance in court with a lawyer is in large measure a formality after the lawyer has advised the defendant concerning his rights. It seems to me that the vital thing is whether or not a defendant has had the advice of counsel previous to a plea of guilty. It does not seem to me that it is vital to the rights of the defendant that his lawyer actually stand with him in court before the judge at the time a plea of guilty is entered or at the time of sentence on a plea of guilty."

The Court of Appeals later added its own expression on this point (227 F.2d at 895–896):

"The sixth amendment of the federal constitution says nothing about an actual court appearance of counsel. It says that 'in all criminal prosecutions, the accused shall enjoy the right * * * to have the assistance of counsel for his defense.' While it is customary for counsel for a defendant in a criminal case to appear in court, his appearance there merely indicates that he believes that he will thus further the interests of his client. Such appearance is not constitutionally indispensable. If competent, retained counsel, assisting defendant, believes that a plea of guilty should be entered and sentence imposed in the manner in which it occurred in this case, there is no infringement of defendant's rights under the sixth or fourteenth amendments of the federal constitution."

The motion of Mr. Forlano is denied. So ordered.