**UNITED STATES of America,**
**Appellee,**

v.

**Alfred Thomas DuSHANE, Appellant.**

**No. 212, Docket 35050.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 25, 1970.

Decided Dec. 3, 1970.

188

E. Michael Heffernan, West Haven, Conn., for appellant.

Richard P. Crane, Jr., Asst. U. S. Atty. (Stewart H. Jones, U. S. Atty. for the District of Connecticut, on the brief) for appellee.

Before LUMBARD, Chief Judge and ANDERSON and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

Alfred Thomas DuShane appeals from his conviction for violating the Federal Firearms Act, 15 U.S.C. §§ 901–909 (1964), after a jury trial before Walter R. Mansfield, J., in the United States District Court for the District of Connecticut. Appellant, who received a four-year sentence, attacks the findings of the trial court regarding waiver of counsel and consent to a search of his hotel room. Because we think that the court erred regarding the former, we remand for further proceedings.

I.

The alleged waiver of counsel did not take place at appellant's trial in the court below but occurred in the course of an Oklahoma proceeding in 1959, at which time defendant pleaded guilty to second degree forgery. That conviction was a significant element in appellant's later federal conviction under 15 U.S.C. § 902(e), from which this appeal is taken.[1] Section 902(e) provides:

It shall be unlawful for any person * * * who has been convicted of a crime punishable by imprisonment for a term exceeding one year * * * to ship, transport, or cause to be shipped or transported in interstate or foreign commerce any firearm or ammunition.

The statute is obviously an attempt to control commerce in firearms by felons, so that proof of the latter status is an integral part of the crime. The parties

1. After DuShane's indictment but before his conviction, the Federal Firearms Act was repealed by the Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. No. 90–351, § 906, 82 Stat. 234. The same crime is now covered by 18 U.S.C. App. § 1202(a)(1) (1969).

agree that the 1959 Oklahoma conviction was for "a crime punishable by imprisonment for a term exceeding one year."[2] What is in dispute is whether the Oklahoma conviction was constitutionally valid. If it was not, the parties assume—and we believe correctly so—that it could not be the basis of a conviction under section 902(e).

The crucial question regarding the 1959 conviction is whether DuShane waived his right to counsel at that time. The issue arises in the following context. During appellant's two-day trial in the court below, the Government sought to introduce, as it had to, a certified copy of the Oklahoma conviction. That copy was silent as to whether defendant had been represented by counsel when he pleaded guilty in 1959. After objection by defense counsel, the court held a hearing outside of the presence of the jury, at which defendant testified that he was not represented by counsel in 1959, and that he did not "voluntarily waive any right to counsel." On cross-examination, he admitted that he was told "that I could have an attorney," but asserted that he "told them I couldn't afford one." The district court admitted the conviction into evidence, subject to later reconsideration. After the jury returned a verdict of guilty, the court instructed both counsel to investigate the 1959 proceedings further. The following month, a hearing was held on defendant's motion for a judgment of acquittal, at which time the court received a copy of Oklahoma court records submitted by defendant, and two affidavits submitted by the Government: one from the deputy clerk of the Oklahoma court in 1959, and the other from the prosecutor at that time. The records made clear that DuShane was not represented

by counsel, but were silent as to what he was advised by the Oklahoma judge or whether defendant waived counsel. The affidavits *in haec verba* state that the Oklahoma judge "always advised the defendants either with or without an attorney that they were entitled to an attorney and if they could not afford one, that the Court would appoint them one at no expense to them but would be paid for from the court fund * * *." Neither affiant stated any specific recollection of DuShane's case. There are no minutes of what actually transpired because, we are told, court stenographers were not used in arraignments in the Oklahoma courts in 1959. Finally, the parties agree that in 1959 an Oklahoma statute provided:

> If the defendant appear for arraignment, without counsel, he must be informed by the court that it is his right to have counsel before being arraigned, and must be asked if he desires the aid of counsel. If he desires and is financially unable to employ counsel, the court must assign counsel to defend him.

22 O.S. § 464.[3]

Based upon this record, the district judge found that appellant made "an intelligent and knowing waiver" in 1959 of his right to counsel. The court relied on the two affidavits and "the existence of the Oklahoma statute," stating that it "cannot presume that the [Oklahoma] court would not follow the law of the State." The judge also did not accept as credible DuShane's testimony as to non-waiver.

The issue is thus simply posed. Appellant did not have counsel in 1959, and both parties assume that the validity of the Oklahoma conviction depends upon

2. Appellant in fact received a sentence of three years from the Oklahoma judge.

3. There appears to be some question whether in 1959 the statute included the word "financially." In 1961 and 1967, the statute read "and is unable * * *." 22 O.S.1961, § 464; 22 O.S.Supp.1967, § 464. However, since 1968, the statute has read "and is financially unable * * *." 22 O.S.Supp.1968, § 464; 22 O.S.Supp.1969, § 464; 22 O.S.Supp.1970, § 464. In any event, we have concluded, and the parties appear to agree by not raising the issue, that the minor variation does not alter the meaning of § 464 for the purposes of this case.

whether he can be held to have waived his right to counsel at that time. Relying principally on Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), appellant argues that such a holding is not permissible because the official record is silent as to waiver. The Government argues that the two affidavits, the Oklahoma statute, and the trial judge's refusal to credit defendant's testimony are a sufficient basis for the holding of waiver.

In *Burgett*, defendant was indicted under a multi-offender statute for assault with malice aforethought and with intent to murder. Four counts of the indictment alleged previous felony convictions which, if valid, would have subjected defendant to life imprisonment upon conviction of the principal offense. The indictment was read to the jury over defense counsel's motion to quash those counts relating to the past felonies. The trial court did, however, subsequently charge the jury to disregard the prior offenses for all purposes. Defendant did not receive enhanced punishment on the basis of the prior convictions.

The Supreme Court overturned the conviction. It found that the records of prior convictions, which left ambiguous the question whether defendant was offered counsel, could not be introduced at the trial. The Court reasoned that the certified records

> on their face raise a presumption that petitioner was denied his right to counsel in the Tennessee proceeding, and therefore that his conviction was void. Presuming waiver of counsel from a silent record is impermissible. * * * The admission of a prior conviction which is constitutionally infirm under standards of *Gideon v. Wainwright* is inherently prejudicial and we are unable to say that the instructions to disregard it made the constitutional error "harmless beyond a reasonable doubt" * * *. [Citations and footnotes omitted.]

389 U.S. at 114–115, 88 S.Ct. at 261–262.

■ If appellant did not waive his right to counsel in 1959, *Burgett* would obviously require us to set aside his conviction. In this case, the validity of the Oklahoma conviction is a prerequisite to the federal conviction. The question is not, as in *Burgett*, merely one of prejudice but instead goes to the validity of the indictment itself. However, we are told that *Burgett* is inapplicable here because waiver was not presumed "from a silent record" but was found as a fact after a hearing. But what was the basis of the finding? Judge Mansfield's refusal to "presume that the [Oklahoma] court would not follow the law of the State" was in fact a presumption that the Oklahoma court would follow it. However, once DuShane established that he had been without counsel in 1959, the burden was then on the Government to prove waiver, and under *Burgett*, this sort of presumption would seem insufficient. See Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); cf. Wilson v. Wiman, 386 F.2d 968 (6th Cir. 1967), cert. denied, 390 U.S. 1042, 88 S.Ct. 1634, 20 L.Ed.2d 303 (1968) (court relied in part on a "presumption of regularity in court procedures," when petitioner had not established that he had been without counsel).

■ Moving on to other possible bases for the finding of waiver, the refusal to accept defendant's testimony as to non-waiver was within the judge's discretion. However, it formed no affirmative basis for a finding of waiver, particularly since the judge did not reject, as he could not in view of the undisputed records, defendant's testimony that he actually did not have counsel. This leaves as a basis for the finding of waiver only the two affidavits made ten years later, swearing to the general custom of the Oklahoma judge, but claiming no specific recollection, and admitted over defense counsel's objection that he wanted to cross-examine the affiants. While evidence of this type is competent to prove that a person acted in the same manner in a specific situation, see Rule 4–06 of the Federal Rules of Evidence

for the United States District Courts and Magistrates (Preliminary Proposed Draft 1969), we think that the affidavits were not sufficient to carry the day for the Government once it was clear that defendant actually did not have counsel. In United States v. Forlano, 319 F.2d 617, 619 (2d Cir. 1963), Chief Judge Lumbard characterized a similar affidavit of a court clerk as entitled to "little, if any weight," but pointed out that:

> Testimony to the same effect given by the affiant on the witness stand would have been \* \* \* more compelling \* \* \*.

Indeed, on remand, the clerk did testify, and his testimony was apparently credited; the district court found that defendant had "not sustained the burden of showing that he lacked the assistance of counsel \* \* \*." United States v. Forlano, 249 F.Supp. 174, 181 (S.D.N.Y.1965), aff'd per curiam, 355 F.2d 934 (2d Cir. 1966). However, without such testimony here and in light of defendant's timely objections, the Government simply did not carry its "heavy burden" to prove that defendant waived his right to counsel. See Wilson v. Wiman, *supra*, 386 F.2d at 969; Smith v. Crouse, 298 F.Supp. 1029 (D.Kan.1968), aff'd per curiam, 413 F.2d 979 (10th Cir. 1969) (involving Oklahoma conviction).

Accordingly, on this record, the evidence of the Oklahoma conviction was improperly introduced. However, it may be that the Government can produce live witnesses whose testimony, after cross-examination, as to what transpired in Oklahoma in 1959 could be a proper basis for a finding of waiver. See the proceedings in *Forlano, supra.* Cf. United States ex rel. Ackerman v. Russell, 388 F.2d 21 (3d Cir. 1968). Therefore, we remand for a further evidentiary hearing on the issue of waiver.

After such hearing and the careful consideration that the issue requires, if the trial judge concludes that the Government has not carried its burden of proving waiver, the judgment of conviction should be set aside. If he finds waiver, the judgment of conviction will remain, but appellant will again be able to pursue appellate remedies, if he so wishes, on the fuller record.

## II.

Since we do not know whether the further proceedings required by Part I of this opinion will result in a reversal of appellant's conviction, we believe it appropriate to deal briefly with appellant's other argument on appeal.[4]

Appellant contends that the trial court erred in denying his pre-trial motion under Fed.R.Crim.P. 41 to suppress evidence seized during an allegedly illegal search of his hotel room. The Government concedes that the search was made without a warrant and was not incident to a valid arrest but argues that appellant voluntarily consented to the search. After a full hearing at which defendant failed to testify, Judge Mansfield agreed with the Government.

The facts relevant to this issue, as Judge Mansfield found them or as they appear substantially undisputed in the record, are as follows. Two agents assigned to the Jacksonville, Florida, FBI office received a telephone call from a used car dealer informing them that two men, who were staying at the Robert Meyer Hotel in Jacksonville, had purchased a 1962 Thunderbird with cash taken from an attache case "stacked" with United States currency. The two agents proceeded to the hotel where the desk clerk identified appellant and another man in the lobby, and stated that they had registered in room 1520 and had attempted to check an attache case.

---

4. Moreover, it appeared at oral argument that in the event of a reversal of the conviction, the Government might attempt to proceed against DuShane for the same ultimate violation, but based upon a different predicate conviction of DuShane in 1962 while he was serving in the armed forces. Therefore, that possibility of another trial exists, although we express no view on the merits of whether the Government could now proceed in that matter.

The agents and two Jacksonville police detectives, who had observed a 1962 Thunderbird illegally parked in front of the hotel, went up to the 15th floor where they met appellant in the hallway. After identifying himself, one of the detectives asked appellant if he owned the 1962 Thunderbird and could produce the bill of sale. Appellant, admitting ownership of the car, stated that the bill of sale was in his room, and that he would be happy to produce it. The five men then walked down the hall to room 1520 where appellant unlocked the door and walked in, leaving the door open. The FBI agents and the detectives followed appellant into the room and examined the bill of sale. While in the room, one of the agents asked appellant whether he had an attache case containing a large amount of money. Appellant at first answered in the negative. However, when confronted with an attache case that had been observed through the open bathroom door, appellant admitted that it was his and that it contained some money he had saved. Appellant was asked to open the case and he did, apparently willingly. Inside the case were a great deal of money and two guns. At this point, the agents advised appellant of his constitutional rights. Appellant and his confederate,[5] who had returned to the room, were thereafter arrested and released the next day. One of the guns in the attache case was subsequently identified as having been transported in interstate commerce.

Appellant, citing United States v. Como, 340 F.2d 891 (2d Cir. 1965), contends that there can be no consent under these facts and, therefore, that the gun which was illegally seized cannot form the basis of his prosecution. While we agree that voluntary consent to search cannot be lightly inferred, United States ex rel. Lundergan v. McMann, 417 F.2d 519 (2d Cir. 1969), Como does not require reversal here. In Como, the police officers deceived and coerced the defendant into disclosing that he had narcotics in his room. Defendant had claimed to be cooperating with other agents and apparently believed that a call to them would clear him. This court held that the police officers induced defendant first to take them up to his room and then to disclose and turn over the narcotics by leading him to believe that the phone call would be made. In fact, it was not. In this case, however, there was no unkept promise. While the officers obtained admission into the room by asking about the Thunderbird, they had a right to make that inquiry. Moreover, the facts developed at the hearing support the conclusion that the officers did not deceive appellant into opening the attache case. Perhaps we might have reached a different conclusion as to consent were we the original triers of fact. But we cannot say that the trial court's factual findings, which led to the ultimate finding of consent, were clearly erroneous. United States v. Bracer, 342 F.2d 522 (2d Cir.), cert. denied, 382 U.S. 954, 86 S.Ct. 427, 15 L.Ed.2d 359 (1965). Therefore, we affirm the denial of the motion to suppress.

The case is remanded for further proceedings consistent with this opinion.

---

5. Walter Ullerup, who was originally a defendant in this action, died in a motorcycle accident prior to trial.