**UNITED STATES of America,
Plaintiff,**

v.

**Roland Datus McDOWELL and Lloyd
DeWitt Riley, a/k/a Talib
R. Shabazz.**

**Crim. A. Nos. 70–293, 70–300.**

United States District Court,
W. D. Pennsylvania.

May 14, 1971.

David O'Hanesian, Pittsburgh, Pa., for defendant.

David M. Curry, Asst. U. S. Atty., Pittsburgh, Pa., for the United States.

OPINION

DUMBAULD, District Judge.

Jury trial having been duly waived, and the Government's evidence received, and the defendants having put in no evidence, the Court, being convinced beyond a reasonable doubt, found as facts that defendants did purchase and receive guns[1] from licensed gun dealers, and did in each instance in connection with such transactions knowingly execute false statements on Form 4473 that they had not been convicted of any criminal offense punishable with imprisonment for more than one year;[2] and accordingly found them guilty of violating 18 U.S.C. § 922(a) (6), which provides:

(a)  It shall be unlawful

\*      \*      \*      \*      \*      \*

(6)  for any person in connection with the acquisition or attempted ac-

---

1. In two counts involving Riley there was merely an attempt to purchase (also criminal under the statute), completion of the transaction having been prevented by warning to the dealer from a law enforcement officer.

2. Riley (alias Talib Shabazz) had been convicted in Allegheny County of burgla-

ry, an offense punishable with imprisonment at hard labor for not more than five years.  18 P.S. § 4903.  McDowell had been convicted in Westmoreland County of corrupting the morals of a minor under the age of eighteen, an offense punishable with imprisonment not exceeding three years.  18 P.S. § 4532.

quisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false ·or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter.

18 U.S.C.A. § 924(a) provides the penalty:

(a) Whoever violates any provision of this chapter or knowingly makes any false statement or representation with respect to the information required by the provisions of this chapter to be kept in the records of a person licensed under this chapter, * * * shall be fined not more than $5,000, or imprisoned not more than five years, or both, and shall become eligible for parole as the Board of Parole shall determine.

The materiality of the false statement is derived from 18 U.S.C. § 922(d) (1), which makes it unlawful "for any licensed importer,· licensed manufacturer, licensed dealer, or licensed collector to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person

(1) is under indictment for, or has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year."

By 18 U.S.C. § 921(a) (20) the term "crime punishable by imprisonment for a term exceeding one year" is defined so as to exclude "any State offense (other than one involving a firearm or explosive) ·classified by the laws of the State

as a misdemeanor and punishable by a term of imprisonment of two years or less."

18 U.S.C. § 923(g) provides for keeping of records as required by the Secretary of the Treasury.

Able counsel for the defense elected to produce no testimony, but to rely upon the Government's failure to negate, as part of its burden of proving each element of the offense beyond a reasonable doubt, the alleged defense that the convictions were constitutionally invalid by reason of alleged failure to notify defendants of their right to appeal. Defendant cites Douglas v. California, 372 U.S. 353, 355, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), as requiring such notification.[3]

In support of this defense, counsel cited United States v. DuShane, 435 F.2d 187 (C.A. 2, 1970) and also United States v. Forlano, 319 F.2d 617, 619 (C. A. 2, 1963).

The question is concededly one of first impression in this circuit, and this Court is not convinced that the defense is meritorious.

In the first place, we believe that the Government is entitled to rely upon an unreversed and collaterally unassailed judgment of conviction under the rule of official regularity, *omnia praesumuntur rite esse acta*. Bank of the United States v. Dandridge, 12 Wheat. 64, 69–70, 6 L.Ed. 552 (1827); United States v. Chemical Foundation, 272 U.S. 1, 14–15, 47 S.Ct. 1, 71 L.Ed. 131 (1926).

Assuming *arguendo* that where the question of constitutional validity is put in issue by defendant the ultimate burden of persuasion may rest on the · Government, it certainly seems clear that in the first instance the burden of going forward with proof sufficient *prima facie* to raise the issue is incumbent

---

3. Actually, *Douglas* simply holds that indigent defendants are *entitled to counsel on appeal* when a paying appellant would be entitled to utilize counsel. But we shall assume, *arguendo*, that the Four-

teenth Amendment requires the States to observe the often otiose requirements contained in Federal Criminal Rule 32(a) (2).

upon the defendant. Otherwise every criminal trial would be encumbered with an infinite number of collateral issues, limited only by the ingenuity of counsel in imagining additional "witty diversities" of constitutional dimension, the unsoundness of which the Government would be required to demonstrate as part of its case in chief.

Assuming *arguendo* also that defendants might successfully have attacked their convictions collaterally by *habeas corpus* or other post conviction remedy, it is nonetheless indisputably true that they have not in fact done so.

The situation is similar to a marriage which might have been annulled, or a contract which a minor might have disavowed after reaching full age. Unless available remedies are utilized to nullify the existing status, it remains in full force and effect. The Government is entitled to rely upon the existing situation, rather than being required to negate a nonexistent potential modification thereof.

It would add immeasurably to the congestion clogging the criminal courts if the Government were required to prove as part of its burden in every case that no potential constitutional infirmity existed which might possibly be availed of to undo an existing judgment of conviction.

The Second Circuit cases relied on by defendants involved lack of representation by counsel. Defendants in the case at bar *were* represented by counsel. One of them (McDowell) was represented by Irving M. Green, Esq., a very capable attorney with extensive criminal practice in this Court as well as in his home county of Westmoreland. We are convinced that it is a wholly speculative, hypothetical, and imaginary injury to the defendant represented by Mr. Green to conjecture that Mr. Green did not consider the possibility of appeal if there were any plausible grounds therefor. Nor can we assume, without some scintilla of proof, that the attorney representing the other defendant was incompetent in this respect.

Indeed we believe that as a matter of general knowledge any defendant, especially one with prior experience in criminal courts, such as the defendants here, knows of the right to appeal. So often on television and in the press do we read, after every conviction in a case receiving any notoriety, that the defeated litigant intends to appeal "all the way to the United States Supreme Court if necessary" (conveniently overlooking the difficulties of persuading that august tribunal to grant certiorari in a run-of-mine case), that it is hard to believe that defendants in the case at bar were ignorant of this basic remedy available to parties dissatisfied with the outcome of a trial in the nisi prius court. At least when defendants offer no testimony in support of their contention, we find it emanating an aura of unreality.

We find a clear distinction, then, between the cited cases involving lack of counsel (which always connotes a substantial possibility of fundamental unfairness or detriment) and the supposed inadequacy of representation based upon imagined failure to advise defendants sufficiently regarding their right to appeal.

*Forlano* simply holds that a defendant who has already served a sentence may institute proceedings by way of *coram nobis* to vacate the sentence where there is danger of its being used to establish a greater punishment for recidivism, and where he had no counsel at the time of his guilty plea.

*DuShane* does involve a prosecution under another provision of the gun law forbidding interstate shipments by a person convicted of a crime punishable by imprisonment for more than a year. [15 U.S.C. § 902(e), now 18 U.S.C.App. § 1202(a)].

The opinion in *DuShane* says:

The statute is obviously an attempt to control commerce in firearms by felons, so that proof of the latter status is

an integral part of the crime. The parties agree that the 1959 Oklahoma conviction was for a "a crime punishable by imprisonment for a term exceeding one year." What is in dispute is whether the Oklahoma conviction was constitutionally valid. If it was not, the parties assume—and we believe correctly so—that it could not be the basis of a conviction under section 902(e).

The crucial question regarding the 1959 conviction is whether DuShane waived his right to counsel at that time. (435 F.2d pp. 188–189)

Although the above-quoted language is favorable to the defense advanced in the case at bar, it makes clear that the basic issue in *DuShane* was lack of representation by counsel *vel non*.

Moreover, there is also a distinction to be drawn between constitutional infirmities which are merely technical (such as that relied on in the case at bar) which for the sake of punishing the constable for blundering permit the guilty man to go free,[4] and those which may affect the intrinsic reliability of the guilt-finding procedure.[5]

■ We think the legislative history and the intent of Congress in the gun law involved in the case at bar show clearly that the statute should be interpreted as not requiring the Government to prove the absence of potential technical constitutional defects not affecting the guilt of the party convicted.

■ Congress wanted to keep guns out of the hands of undesirable people. It considered as undesirable those who had been convicted (*i. e.*, found guilty)

of crimes. A technical flaw sufficing to upset the conviction without regard to guilt or innocence would not affect the undesirability *vel non* of the defendant as a gun owner. Congress meant, by the language used, to deprive of access to weapons all guilty persons in fact convicted of the specified type of offenses. The language is used in its ordinary meaning, not in the legalistic refinement of constitutional doctrine. Old Colony R. R. Co. v. Commissioner of Internal Revenue, 284 U.S. 552, 560, 52 S.Ct. 211, 76 L.Ed. 484 (1932); United States v. Wurts, 303 U.S. 414, 417, 58 S.Ct. 637, 82 L.Ed. 932 (1938).

This conclusion is strengthened by the fact that Congress included in the category of persons unfit to buy guns those who were under pending indictments as well as those convicted.

If Congress considered as undesirable persons to have guns those who were merely under indictment, and entitled to the presumption of innocence, it surely follows *a fortiori* that those who had been in fact convicted (even if the conviction were infected with an inchoate infirmity) should be included in the category of undesirable users of firearms. To accept defendants' contention therefore would be to adopt an interpretation producing absurd results and at variance with the policy of Congress. See United States v. American Trucking Ass'ns., 310, 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940).

The situation is similar to that which would be presented if a State enacted a welfare law to furnish free contraceptives to married people on relief.[6] The

---

4. Justice Cardozo in People v. Defore, 242 N.Y. 13, 21, 150 N.E. 585, 587 (1926), aptly epitomized the exclusionary federal rule: "The criminal is to go free because the constable has blundered." See also Elkins v. United States, 364 U.S. 206, 216–217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960).

5. Johnson v. New Jersey, 384 U.S. 719, 728–729, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); Stovall v. Denno, 388 U.S. 293, 298, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

6. Although the Supreme Court has upheld the constitutional natural-law right of married people to use contraceptives [see Negrich v. Hohn, 246 F.Supp. 173, 178 (W.D.Pa.1965)], it has not yet held that it is invidious discrimination against indigents to fail to provide them free of charge in circumstances where they would be available to the affluent [see Douglas v. California, 372 U.S. 353, 355, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963)].

legislative intent to mitigate the population explosion would clearly be emasculated if the courts were to interpret the statute as affording the benefits thereof only to persons who could prove an incontestably valid marriage.

It would surely suffice, in order to obtain the medication offered by the State, if the parties had gone through the ceremony of marriage, or had consistently cohabited together as man and wife, even if some technical requirement of the marriage laws had not been complied with, and their relationship could be annulled if an appropriate proceeding to that end were brought.

The Supreme Court has held in a series of cases that a State may regulate the ownership of property within its territory regardless of a legal status validly gained by a claimant pursuant to the law of another State. Thus in Hood v. McGehee, 237 U.S. 611, 615, 35 S.Ct. 718, 719, 59 L.Ed. 1144 (1915) the Court held that Alabama could regulate the descent of land and exclude from inheritance children adopted elsewhere.

Justice Holmes said:

"The Alabama statute of descents as construed by the supreme court of the state excludes children adopted by proceedings in other states. * * * The construction does not deny the effective operation of the Louisiana proceedings, but simply reads the Alabama statute as saying that, whatever may be the status of the plaintiffs, whatever their relation to the deceased by virtue of what has been done, the law does not devolve his estate upon them. There is no failure to give full credit to the adoption of the plaintiffs, in a provision denying them the right to inherit land in another state. Alabama is sole mistress of the devolution of Alabama land by descent."

Similarly a State can permit a wife, validly divorced in another State, to receive a widow's allowance from land located where she resides. Rice v. Rice, 336 U.S. 674, 679, 69 S.Ct. 751, 93 L.Ed. 957 (1949). See also Armstrong v. Armstrong, 350 U.S. 568, 574, 76 S.Ct. 629, 100 L.Ed. 705 (1956).

▇ ▇ In like manner, we believe, Congress has indicated, by the language of the gun law, its intent to regulate the ownership of guns, regardless of the legal status which a claimant might validly gain by asserting a constitutional infirmity inherent in an existing conviction. Congress is free to deprive convicted persons of guns if it sees fit, even if their conviction could be set aside in appropriate proceedings, just as it can deprive of guns persons who are merely indicted.

▇ A constitutional infirmity unrelated to guilt or innocence does not prevent a person who has undergone the "ceremony" of being convicted of the specified type of crime from being considered by Congress as an unsuitable person to purchase a gun.

The power of Congress to establish such criteria as it chooses to regulate the ownership of guns is surely as extensive as the power of a State to regulate the ownership of land, and to grant a widow a share of her husband's property even though the "ceremony" of divorce has validly severed the marriage tie between them.

▇ Accordingly, we conclude that Congress intended defendants in the situation of those in the case at bar to be amenable to the gun laws (including the penal provisions thereof, of violations whereof they have been found guilty in the case at bar) without the necessity of proof by the Government that no potential constitutional infirmities could be conjured up which might, if appropriate proceedings were brought, perhaps result in annulment of the existing convictions which at the present time stand of record in full force and effect.