UNITED STATES of America

v.

**Bennie GRAVES, Appellant.**

No. 75–2015.

United States Court of Appeals, Third Circuit.

Argued Feb. 11, 1976.

Reargued Before the Court En Banc Nov. 4, 1976.

Decided March 2, 1977.

As Amended March 18, 1977.

---

Paul D. Boas, Berlin, Boas, Isaacson, Logan, Rosenfield & Sharon, Pittsburgh, Pa., for appellant.

Blair A. Griffith, U. S. Atty., Judith K. Giltenboth, Asst. U. S. Atty., H. Bartow Farr, Asst. to the Sol. Gen., Washington, D. C., for appellee.

Argued Feb. 11, 1976.

Before ALDISERT, GIBBONS and RO-SENN, Circuit Judges.

Reargued Nov. 4, 1976.

Before SEITZ, Chief Judge, and VAN DUSEN, ALDISERT, ADAMS, GIBBONS, ROSENN, HUNTER, WEIS and GARTH, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

At stake in the present appeal is the vitality of several key provisions of the Gun Control Act of 1968,[1] a statutory program which restricts the right to bear arms of convicted felons and other persons of dangerous propensities.[2]

---

1. 18 U.S.C. §§ 921–28 (1970); 18 U.S.C. App. §§ 1201–03 (1970).

2. U.S.Const. amend. II states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

   Arguably, any regulation of firearms may be violative of this constitutional provision. Nevertheless, the courts consistently have

Two principal issues pertaining to the Act confront the Court. First, we must determine whether Congress contemplated the use of an outstanding criminal conviction as a predicate for a firearms violation where the defendant questions the constitutionality of the prior conviction but failed to challenge it prior to the proceedings involving the weapons offense. If such a conviction was intended to be so utilized, we then must decide whether there is any constitutional impediment to the regulatory regimen provided by Congress.

## I.

In July, 1972, defendant Bennie Graves was indicted on two counts for violating provisions of the Gun Control Act. The first count alleged that Graves had abridged 18 U.S.C. §§ 922(a)(6)[3] and 924(a)[4] in connection with the purchase of a shotgun when he certified on a firearms registration form that he had not been convicted of a crime punishable by imprisonment for a term of at least one year although, in fact, he knew that he had been. The second count of the indictment charged Graves with contravening 18 U.S.C. Appendix § 1202(a)[5] because, after having been convicted of a felony, he willfully and knowingly received and possessed a shotgun that had moved in interstate commerce.

Underlying the firearms indictment was a state conviction for larceny of an automobile. In April, 1971, a state court had found Graves guilty of that crime, an offense punishable by a term of imprisonment exceeding one year. Graves never sought to overturn his state conviction either by direct appeal or by any mode of collateral attack. Nor did he attempt to expunge it from his record through a pardon or to seek administrative relief from the strictures of the Act.

Immediately prior to his trial on the firearms charges, Graves moved to dismiss the indictment, claiming that the outstanding state conviction had not been constitutionally obtained. Graves grounded his motion on the proposition that, when arrested for auto larceny, he was seventeen years old; that the offense thus could have been disposed of by juvenile authorities; but that the juvenile court, after a hearing, decided to transfer the case to the adult criminal court, where Graves ultimately was convicted.

In the pretrial motion in the present case, Graves asserted that, at the hearing preceding transfer of the larceny charge to the adult court, he had been denied certain

---

found no conflict between federal gun laws and the Second Amendment, narrowly construing the latter to guarantee the right to bear arms as a member of a militia. *See e. g., United States v. Miller,* 307 U.S. 174, 178–82, 59 S.Ct. 816, 83 L.Ed. 1206 (1939); *Cody v. United States,* 460 F.2d 34 (8th Cir.), *cert. denied,* 409 U.S. 1010, 93 S.Ct. 454, 34 L.Ed.2d 303 (1972). *See also* the authorities cited in Note, *Prior Convictions and the Gun Control Act of 1968,* 76 Colum.L. Rev. 326 n. 2 (1976). Graves has not attempted to invoke the Second Amendment as a defense in the present prosecution. Even if he had, we would deem controlling the interpretation adopted in *Miller* and the cases following it.

3. 18 U.S.C. § 922 provides in pertinent part:
(a) It shall be unlawful—
(6) for any person in connection with the acquisition . . . of any firearm . . . knowingly to make any false or fictitious oral or written statement . . . intended or likely to deceive . . . with respect to any fact material to the lawfulness of the sale

or other disposition of such firearm or ammunition . . . .

4. 18 U.S.C. § 924 declares:
(a) Whoever . . . knowingly makes any false statement or representation with respect to the information required by the provisions of this chapter to be kept in the records of the person licensed under this chapter . . . shall be fined not more than $5,000, or imprisoned not more than five years, or both, and shall become eligible for parole as the Board of Parole shall determine.

5. 18 U.S.C. App. § 1202 states:
(a) Any person who—
(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony . . . and who receives, possesses or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

procedural safeguards mandated by due process and explicated by the Supreme Court in *Kent v. United States*.[6] Graves claimed, therefore, that his conviction for auto larceny was constitutionally defective and hence could not contribute to liability under the firearms statutes. The district court did not agree with that contention and refused to dismiss the indictment.

A trial then was held before the district judge sitting without a jury. Graves and the prosecution stipulated the basic facts pertaining to the acquisition and subsequent possession of the shotgun.[7] Upon entry of the stipulation, Graves moved for a judgment of acquittal, reiterating, in essence, the arguments that he had proffered in his pretrial motion to quash the indictment. The government responded that any constitutional infirmities in a prior conviction that had not yet been expunged could not constitute a defense to the firearms charges. Moreover, the government insist-

ed that no proof as to the validity of the outstanding conviction was necessary for the present prosecution.

Subsequently, in May, 1975, the district judge, consonant with his denial of the pretrial motion, found Graves guilty on both counts, and sentenced him to prison under the Federal Youth Corrections Act.[8] Graves then filed an appeal which was heard by a panel of this Court. Thereafter, the case was set down for rehearing before the Court in banc.

We now affirm the guilty verdicts on both counts.

## II.

To ascertain whether Congress intended that an outstanding felony conviction could lead to liability under the firearms statutes, even though a defendant asserts constitutional flaws in the prior conviction, we must examine those materials which may afford

---

**6.** 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).

In *Kent* the Supreme Court ruled that "as a condition to a valid waiver [of jurisdiction by a juvenile court], the petitioner was entitled to a hearing, including access by his counsel to the social records and probation or similar reports which presumably are considered by the court, and to a statement of reasons for the Juvenile Court's decision." *Id.* at 556, 86 S.Ct. at 1055. Thereafter, this Court held that *Kent* "prescribes constitutional duties," relying on the statement in *In re Gault*, 387 U.S. 1, 12, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), and that *Kent* was grounded on "the basic requirement of due process and fairness." *United States ex rel. Turner v. Rundle*, 438 F.2d 839, 842 (3d Cir. 1971).

In the present case, Graves maintains that *Kent* established rigid procedural guidelines for transfer proceedings before juvenile courts, whereas the government takes the position that due process is a flexible concept and that the transfer proceedings accorded Graves comported with the spirit of *Kent*. While it would appear that the transfer hearing basically complied with *Kent*, we need not adjudicate the issue as to whether Graves' transfer hearing was constitutionally infirm. For, as will be discussed in this opinion, we believe that Congress contemplated the use of outstanding convictions, even those attacked as being unconstitutional, as a predicate for firearms violations. Nor do we perceive any constitutional barriers to the regulatory scheme adopted by Congress.

**7.** The following facts were stipulated:

1. On January 19, 1973 in the Western District of Pennsylvania, Bennie Graves, in connection with the acquisition of a firearm, that is, one F.I.E. 12-gauge shotgun, serial No. 292568, from Braverman Arms Company, 912 Penn Avenue, Wilkinsburg, Pennsylvania, a licensed dealer in firearms, made a statement to said dealer which he knew to be false; that is, Bennie Graves certified in writing that he had not been convicted of a crime punishable by a term of imprisonment exceeding one year when in fact Bennie Graves knew that he had been convicted on April 15, 1971 of the crime of larceny of an automobile, a crime punishable by a term of imprisonment exceeding one year in the Criminal Court of Allegheny County, Pennsylvania.

2. On January 19, 1973, in the Western District of Pennsylvania, Bennie Graves, having been convicted on April 15, 1971 of the crime of larceny of an automobile, as mentioned in paragraph one of this stipulation, knowingly received one F.I.E. 12-gauge shotgun, serial No. 292568, from Braverman Arms Company, 912 Penn Avenue, Wilkinsburg, Pennsylvania; this shotgun was manufactured in a state other than Pennsylvania and was transported to Pennsylvania sometime within two years prior to January 19, 1973.

Record at 24.

**8.** The opinion of the district court is reported at 394 F.Supp. 429 (W.D.Pa.1975).

insight into Congressional intent: (a) the language of the statutes, (b) the legislative history, and (c) the opinions of other courts which have endeavored to interpret the statutes.

■ These materials suggest that the legislative draftsmen desired persons with extant, though arguably unconstitutional, convictions to forbear from the purchase and possession of firearms until their convictions are voided by the courts or until they are freed from such disability by executive action. Failure to so refrain was intended to subject such persons to the penalties specified in the Act. Congress, in our view, did not expect disputes over the constitutional validity of a prior conviction to intrude upon trials of federal weapons offenses, at least in the type of factual context presented by this case.

## A. THE STATUTORY PROGRAM.

Our inquiry opens with an examination of the provisions under which Graves was charged and the overarching statutory program within which they operate.[9] The enactments alleged to have been violated fall within two separate titles of the Gun Control Act: 18 U.S.C. App. § 1202(a) is found in Title VII, and 18 U.S.C. §§ 922(a)(6) and 924(a) comprise part of Title IV.[10] Coverage of these titles overlaps; each one limits the right of convicted felons and certain other persons to receive or transport guns.[11] Nevertheless, the two titles are not wholly congruent. With minor exceptions, only Title VII directly regulates the possession of firearms by the named individuals. Title IV, unlike Title VII, bars false statements by participants in weapons transactions.

1. *Title VII: 18 U.S.C. App. § 1202(a)*

Section 1202 proscribes the possession, receipt or transportation, in interstate commerce, of firearms by classes of persons that Congress deemed likely to misuse them. Those covered include convicted felons, mental incompetents, dishonorable dischargees from the armed forces, individuals who renounce their citizenship, and illegal aliens.[12] And there are only limited exemptions to the coverage of the Act. A convicted felon, for example, may become immunized from statutory liability if he secures a pardon expressly authorizing him to carry weapons.[13]

On its face, § 1202 affords insight into Congressional intent with respect to the problems raised by this case. The provision speaks to the person who "has been convicted by a court . . . of a felony." It contains no requirement that the conviction be obtained in any particular manner. Thus, textually, it is the *fact* of conviction which calls into play the disability imposed by Title VII.

We note also that § 1202, despite its location within the federal criminal code, is essentially regulatory in nature. It is unlike most other criminal laws which proscribe acts that are in themselves pernicious, *e. g.,* kidnapping, theft or embezzle-

---

9. We take heed of Judge Henry Friendly's bodacious comment in *Mr. Justice Frankfurter and the Reading of Statutes,* Felix Frankfurter: The Judge (Mendelson ed. 1964): "If we would arrive at the meaning of a statute, we must first read it—a homely truth which ought to be self-evident. . . ."

10. Title IV consists of 18 U.S.C. §§ 921–28, and 18 U.S.C. App. §§ 1201–03. Originally, Title IV was part of the Omnibus Crime Control and Safe Streets Act of 1968, a comprehensive legislative program with provisions pertaining to *inter alia,* the admissibility of confessions, wiretapping, law enforcement assistance as well as firearms regulations. Title VII was a last minute amendment to the Crime Control Act, intending to bolster the regulatory scheme of Title IV. Together, Titles IV and VII comprise what now is denominated as the Gun Control Act of 1968.

11. *Compare* 18 U.S.C. § 1202(a) *with* 18 U.S.C. § 922(g)–(h).

12. 18 U.S.C. § 1202(a)(1)–(5).

13. 18 U.S.C. § 1203(2) exempts from the coverage of Title VII:

Any person who has been pardoned by the President of the United States or the chief executive of a State and has expressly been authorized by the President or such chief executive, as the case may be, to receive, possess or transport in interstate commerce a firearm.

ment. By contrast, the receipt or possession of firearms does not constitute conduct that is inherently harmful. As a result, Congress has not interdicted such behavior altogether. Rather, what the legislative authors have done is to impose controls on activities involving weapons.

The Congressional declaration set forth in § 1201 voices concern regarding the deleterious effects of firearms use by persons with possibly dangerous inclinations.[14] Not surprisingly, the prohibitions established by Title VII are somewhat sweeping, indicating that the draftsmen desired to regulate individuals having even the slightest potential for threatening community safety. We cannot say—certainly on the record before us—that it was unreasonable for Congress to have believed that a person with an outstanding felony conviction, even one that has been attacked as unconstitutional, may be somewhat more likely than the average citizen to utilize a gun improperly. And the statutory terms suggest that an outstanding conviction may contribute to liability under Title VII and its central provision, § 1202.

### 2. Title IV: 18 U.S.C. §§ 922(a)(6) and 924(a)

Section 922(a)(6) declares that it is unlawful for any person "knowingly to make any false or fictitious oral or written statement . . ." in connection with the acquisition of firearms.[15] While this provision in itself does not oblige a prospective gun purchaser to divulge any criminal infractions on his record, the Treasury Department requires, as a precondition to acquisition of a weapon, completion of an application form on which the purchaser must state whether he ever has been convicted of a crime punishable by imprisonment for more than one year.[16] To deny an outstanding felony conviction on such form would appear to subject the purchaser of firearms to liability under § 922(a)(6). Section 924(a) delineates the penalties for making the false representations in the acquisition or transfer of weapons.

Under the legislation, comprehensive records are to be kept with respect to all firearms transactions. No person is exempt from the regulatory coverage of the Act. Importers, manufacturers, dealers, collectors and purchasers alike must submit the information mandated by federal authorities. Indeed, the disclosure sections of Title IV do not differentiate in their treatment of felons and non-felons. Facially, §§ 922 and 924 are designed to punish any material misrepresentation concerning a weapons transaction, whether or not the misrepresentation relates to a conviction. They do not penalize an individual for being a convicted felon, but only for failing to answer truthfully questions about his criminal record. Even more so than § 1202, then, these provisions are essentially regulatory as contrasted with being strictly criminal in nature.

■ A question which immediately arises is whether Congress envisaged the prosecution of an individual with an outstanding

---

14. In its declaration in 18 U.S.C. § 1201, Congress, catalogued the dangers posed by persons with conceivably dangerous propensities, contending that their use of firearms constituted:
    (1) a burden on commerce or threat affecting the free flow of commerce,
    (2) a threat to the safety of the President of the United States and Vice President of the United States,
    (3) an impediment or a threat to the exercise of free speech and the free exercise of a religion guaranteed by the first amendment to the Constitution of the United States, and
    (4) a threat to the continued and effective operation of the Government of the United States and of the government of each State guaranteed by article IV of the Constitution.

15. For the texts of §§ 922(a)(6) and 924(a), see notes 3 and 4 supra.

16. In order to acquire the shotgun, Graves completed Form 4473, the standard Treasury Department form employed in firearms transactions. He answered in the negative the following question:
    Have you been convicted by any court of a crime punishable by a term exceeding one year? (Note: the actual sentence given by the judge does not matter—a yes answer is necessary if the judge could have given a sentence of more than one year.)
    Government Exhibit # 1.

conviction, though one asserted to be unconstitutional, when he denies ever having been a felon. Inspection of § 922(a)(6), and Title IV as a whole, suggests that a person who is a convicted felon must divulge the fact of his conviction, regardless of whether or not he believes it to be unconstitutional. And the registration form hardly intimates that a prospective purchaser of a firearm is entitled to conceal a conviction that has not been vitiated, any more than he could suppress any other fact material to the transaction.

From the statutory language, it is apparent that the legislative framers intended to elicit detailed and accurate information so as to be able to monitor the movement of guns. In this regard, it is equally evident that Congress wished to penalize a person with an outstanding, though assertedly unconstitutional, conviction for failing to disclose the fact of such criminal adjudication.

We recognize that such an interpretation of §§ 922 and 924 tangentially implicates a conviction which may at some future time be deemed constitutionally infirm. Nevertheless, two components of Title IV strongly indicate that Congress intended that such

a conviction could conduce to liability under the statutes. These features will be reviewed not only for their relevance to our discussion of Title IV, but also as support for the analysis concerning Title VII.[17]

Sections 922(g) and (h), like § 1202(a), provide that it is illegal for convicted felons and other specified persons to receive or transport firearms.[18] The classes of persons covered by § 922, however, vary somewhat from those regulated by § 1202. In addition to convicted felons and mental incompetents, Title IV places firearms restrictions on illicit drug users, drug addicts, fugitives from justice and persons under indictment for crimes punishable by imprisonment in excess of one year.

Of these categories of individuals, the most pertinent to our inquiry here is the group containing indicted persons. An indictment ordinarily has limited legal effect, reflecting the deliberations of grand jurors as to probable cause for believing that the indictee might be guilty. Unlike a conviction, the indicted offense remains unproved, at least through trial; the individual named in the indictment remains innocent until guilt is demonstrated.[19] Even so, Congress

---

**17.** It could be argued that the provisions of Title IV may not be used to facilitate the construction of Title VII. For the Supreme Court, in one context, seems to have indicated that Titles IV and VII should be read independently of one another. *United States v. Bass,* 404 U.S. 336, 344, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). There the Supreme Court was called upon to render a construction of § 1202(a) regarding the nexus between interstate commerce and the activities embodied by the provision. The Court said that "no conclusion can be drawn from Title IV concerning the correct interpretation of Title VII." While this statement may appear to preclude any invocation of Title IV as an interpretative aid for Title VII, we do not read that language so broadly. The *Bass* Court was addressing a narrow issue unrelated to the problems posed in this case—to wit, whether the phrase "in interstate commerce" modified only the word "transports" in § 1202(a) but not "receipt" or "possession." Moreover, the second of the Title IV provisions (§ 925(c)), which may provide insight pertinent to our inquiry as to the legislative intent, clearly applies to Title VII as well. *See* note 21 *infra.*

**18.** 18 U.S.C. § 922(h) makes it
Unlawful for any person—

(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

(2) who is a fugitive from justice;

(3) who is an unlawful user of or addicted to marihuana or any depressant or stimulant drug . . . or narcotic drug . . . ; or

(4) who has been adjudicated as a mental defective or who has been committed to any mental institution;

to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g) is identical to § 922(h), except that it governs the shipment and transportation of firearms rather than the receipt thereof.

**19.** *See, e. g., Tot v. United States,* 319 U.S. 463, 466, 63 S.Ct. 1241, 1244, 87 L.Ed. 1519 (1943) ("An indictment charges the defendant with action or failure to act contrary to the law's command [but] does not constitute proof of the commission of the offense."); *United States v. Wortman,* 26 F.R.D. 183, 204 (E.D.Ill.1960) ("A grand jury is an investigative body, whose purpose it is to investigate and determine whether or not there is a reasonable belief that a crime

undoubtedly found that persons under indictment have a somewhat greater likelihood than other citizens to misuse firearms. And so indictees were included within the prohibitory classification of § 922.

Section 922 would appear to provide some evidence of Congressional intent concerning the issues in this case. This is so since there are a number of similarities between an indictment and a conviction claimed to be unconstitutional. Both may result in the eventual vindication of the defendant, thereby dissolving the disability with respect to firearms. The restriction in either case may be only a temporary one which will be removed when a court frees the defendant from the scrutiny of the criminal justice system or when the executive branch grants a dispensation. To argue, as does Graves, that Congress intended to impose no disability on persons with outstanding convictions that they assert are unconstitutional, but to impose a disability on persons under indictment, would be to charge the legislative framers with a manifest inconsistency. We cannot discern that Congress sought to design such an asymmetrical statutory arrangement.

The other relevant feature of Title IV, insofar as our current inquiry is concerned, consists of subsection (c) of § 925, which affords a procedure to secure relief from any firearms disability imposed on a convicted felon.[20] Basically, this provision stipulates that any person with a criminal record may apply to the Secretary of the Treasury for relief from the weapon restrictions dictated by federal law. The Secretary may grant such relief if he is satisfied that the "applicant will not be likely to act in a manner dangerous to the public safety and that the granting of the relief would not be contrary to the public interest." It is clear that § 925(c) applies to more than Title IV because it refers to disabilities on possession—an activity regulated by Title VII.[21]

Section 925(c) is quite revealing in connection with the issues under review because that provision affords an individual with an outstanding conviction, that he contends was unconstitutionally rendered, an additional method with which to attack such conviction aside from the usual direct appeal, a petition for post-conviction relief or the pardon procedure. No reason appears why assertions as to unconstitutional-

has been committed. . . . The fact that a grand jury has returned an indictment does not mean that those charged therein are guilty of the offense. Innocence or guilt must be determined by a court and [petit] jury.")

20. 18 U.S.C. § 925(c) provides in part:
A person who has been convicted of a crime punishable by imprisonment for a term exceeding one year (other than a crime involving the use of a firearm or other weapon or a violation of this chapter of the National Firearms Act) may make application to the Secretary for relief from the disabilities imposed by Federal laws with respect to the acquisition, receipt, transfer, shipment, or possession of firearms and incurred by reason of such conviction, and the Secretary may grant such relief if it is established to his satisfaction that the circumstances regarding the conviction, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest.

21. That the relief provision, § 925(c), is applicable to Title VII is evident from its terms as well as its legislative history. While the other exemptions provided in § 925 expressly cover only Title IV, subsection (c) speaks broadly, declaring that the Secretary may grant "relief from the disabilities imposed *by Federal laws* with respect to . . . possession of firearms." (emphasis added) The use of the word "laws" indicates that the relief procedure embraces statutory provisions other than Title IV. More importantly, the regulation of "possession" is an activity largely within the province of Title VII. The only references to "possession" in Title IV involve restrictions thereon imposed by state, not federal, laws.

Our reading as to the scope of § 925(c) finds support in the legislative history to this statutory provision. The Conference Report, accompanying the Gun Control Act of 1968, describes § 925(c) as providing "relief from restrictions imposed by any Federal law (not just chapter 44 [*i. e.*, Title IV]) by reason of conviction." As a result, the disabilities imposed by *both* Titles IV and VII may be rendered nugatory by the procedures set forth in § 925(c).

ity could not be considered in the course of the decision by the Secretary.

More importantly, the presence of the relief provision suggests that Congress expected felons, from time to time, to challenge their convictions and, in so doing, remove any prohibition before resuming their place among the ranks of users of firearms. Failure to overturn their disability, either judicially through an appeal or a post-conviction proceeding or administratively through the Secretary or pardoning authorities, would reinforce the viability of the statutory restriction. It follows that Congress did not plan that the constitutionality of an underlying conviction would be adjudicated during the very prosecution for the firearms violation, at least where the defendant has not even sought to void such conviction through other available channels. Also, it is questionable whether Congress intended to permit such an individual to attack, or require the government to demonstrate, the validity of a prior conviction during a trial for misrepresentation on the requisite registration form.

In sum, the Gun Control Act in itself contains evidence, somewhat sparse but nonetheless telling, regarding the intent of Congress as to the questions posed in this action. The language of the statute suggests that the legislative framers sanctioned the use of an outstanding criminal conviction as a predicate for a firearms violation, even where the defendant questions the constitutionality of the prior conviction during his trial on the gun charges. This is particularly so where, as here, the defendant, before resuming the use of firearms, has in no way challenged such conviction through any of the procedures contained in the Act.

## B. THE LEGISLATIVE HISTORY.

### 1.

On the face of the statutes, it appears that Congress intended that an outstanding conviction, even one claimed to be unconstitutional, could give rise to a firearms disability. However, our analysis may not terminate with such a conclusion. Rather, it is fitting to examine the legislative history to decide whether our reading of Titles IV and VII is congenial with the views of the framers expressed at the time of the passage of the legislation.[22] Such a history frequently facilitates a judicial determination of the purposes of the draftsmen.

Consisting of brief committee reports on Title IV and explanations of the Gun Control Act by its sponsors in the Senate and House, the applicable legislative record is somewhat limited in scope and does not speak directly to the precise issues raised in this case. Nevertheless, the statutory history does provide some clues regarding the Congressional intent. Careful consideration of what is available leads us to reaffirm our reading of the legislative terms.

Apparently, Congress initiated its efforts to develop an effective gun program at the behest of President Johnson. In February of 1967, he "urge[d] the 90th Congress to place [such legislation] high on its agenda in this session."[23] The President also declared that "[t]o pass strict firearms control laws at every level of government is an act of simple prudence and a measure of civilized society. Further delay is unconscionable."[24] While this plea may have spurred drafting of the Gun Control Act, further impetus was provided by the

---

**22.** In another context, Justice Frankfurter recognized "the importance of giving 'hospitable scope' to Congressional purpose even when meticulous words are lacking." *United States v. Hutcheson*, 312 U.S. 219, 235, 61 S.Ct. 463, 467, 85 L.Ed. 788 (1941).

Even if the statutes were clear on their face concerning the issues raised in this case, it still would be appropriate to refer to the legislative history. *See Train v. Colorado Public Interest Research Group*, 426 U.S. 1, 9–10, 96 S.Ct.

1938, 48 L.Ed.2d 434 (1976); *Cass v. United States*, 417 U.S. 72, 78–79, 94 S.Ct. 2167, 40 L.Ed.2d 668 (1974).

**23.** S.Rep.No.1097, 90th Cong., 2d Sess. 78 (1968) *quoting* President's Statement on Firearms Control, February 6, 1967; U.S.Code Cong. & Admin.News 1968, pp. 2112, 2116.

**24.** *Id.*; U.S.Code Cong. & Admin.News 1968, p. 2166.

assassinations, by gunmen, of Dr. Martin Luther King and Senator Robert F. Kennedy. The legislation was enacted shortly after these tragic acts of violence.

From the onset of its consideration of Titles IV and VII, it was Congress' objective to limit access to firearms to clearly "responsible [and] law-abiding persons." [25] The legislative history demonstrates deep solicitude over the ever-escalating misuse of firearms. Members of the Senate and House recognized that the "problem of gun abuse . . . is real, it is urgent and it is increasing each year . . . ." [26]

The response was the strict federal firearms controls requested by the President, subjecting to regulation convicted felons and other individuals who might be more prone to weapons misuse than the general public. Given the legislative objective to impose effective controls, and the concomitant desire not to promulgate a "half-way measure," [27] we believe that Congress did have in mind curtailing access to firearms by felons with outstanding convictions, even where these prior convictions are alleged to be unconstitutional.

Some evidence as to the Congressional design on this issue is provided by the floor speeches of Senator Long, a principal sponsor of Title VII. Speaking of the classes of persons whose privilege of firearms use would be limited, the Senator said that the disability applied to "persons who, by their actions, have demonstrated that they are dangerous, or that they *may* become dangerous." [28] Such language evinces, we submit, that Congress wished to regulate all persons who might be more likely than the average citizen to commit illicit acts with guns. The prohibitions of Title VII, as well

as of Title IV, would attach once there is evidence of the possibility of misuse, including, it would appear, the fact of conviction.

In explaining to his colleagues the effect of Title VII, Senator Long invoked an analog in tort law:

> In large part, Title VII is based on the legal theory that every dog is entitled to one bite. . . . But if the dog thereafter attacks a second neighbor, the owner is liable because he has been placed on notice that his dog is dangerous.

> So, under Title VII, every citizen could possess a gun until the commission of his first felony. Upon his conviction, however, Title VII would deny him the right to possess a firearm in the future. . . [29]

Once a conviction is rendered, then, the prohibitions set forth by the statute take hold without more. It may be that the convicted felon can show that the "first bite" constitutes a legal nullity, or that it never occurred at all. But it is questionable whether Congress intended to permit such a person to reclaim the privilege of possessing or receiving weapons before he has attempted to bring about the invalidation of his criminal record or to secure an executive dispensation.

Another statement of Senator Long addressed to the treatment of convicted felons bears on our inquiry here: "What [Title VII] seeks to do is to make it unlawful for a firearm . . . to be in the possession of a convicted felon who has not been pardoned and who has therefore lost his right to possess firearms." [30] Previously, we observed that under the statute even a pardon does not restore such "right" unless the

---

25. *Id.*, at 76, 80.

26. *Id.* at 78; U.S.Code Cong. & Admin.News 1968, p. 2166.

    Apposite here is the statement in *I. C. C. v. J–T Transport Co.*, 368 U.S. 81, 107, 82 S.Ct. 204, 223, 7 L.Ed.2d 147 (1961) (Frankfurter, J., dissenting): "The starting point for determining legislative purpose is plainly an appreciation of the 'mischief' that Congress was seeking to alleviate."

27. H.R.Rep.No.1577, 90th Cong., 2d Sess. 18 (1968), *incorporating* Letter from Atty. General of the United States to Speaker, House of Representatives, June 10, 1968; U.S.Code Cong. & Admin.News 1968, p. 4410.

28. 114 Cong.Rec. 14773 (1968). (emphasis added)

29. *Id.*

30. *Id.*

pardon expressly so states.[31] The pardon provision, and Senator Long's reference to it, indicate that the statutory disability is not one which was meant to be circumvented merely on a felon's belief that his conviction was obtained in an unconstitutional manner.

Once the firearms restriction attaches to an individual, the fact of conviction may trigger a Gun Control Act proceeding—at least until the disabled status is eradicated either judicially or administratively. To subject persons with general pardons to liability, but to excuse those with unchallenged, but supposedly unconstitutional convictions, would foster disharmony in the application of the Act. There is precious little basis for saying that Congress intended to do so.

On the House side, explanations of the Gun Control Act similar to those of Senator Long were submitted by its proponents there. One such comment was proffered by Representative Pollock, who noted: "The overall thrust is to prohibit possession of firearms by criminals or other persons who have specific records or characteristics which raise serious *doubts* as to their probable use of firearms in a lawful manner." [32]

An outstanding conviction, even one claimed to be constitutionally defective, may well raise questions whether the individual should be allowed to have access to weapons. The most obvious way for a person to remove *doubts* about his ability to deal with guns properly is to challenge the source of the doubts—namely, the prior conviction. It is reasonable to assume,

therefore, that Congress expected a convicted felon to undergo the relatively modest inconvenience of a restriction on firearms use until he has obtained a judicial invalidation of his conviction or has secured an executive authorization lifting that restriction. To divine any other objective on the part of Congress might undercut the safeguards afforded by the Gun Control Act and increase the exposure of the public to continuing threats of crimes of violence. This we are unwilling to do.

2.

With respect to solely § 922(a)(6), the legislative history fortifies the conclusion set forth in Part IIA that the provision places an obligation on all prospective gun purchasers to provide full and honest information, and bars false statements in firearms transactions. The House Report declares that § 922(a)(6) "prohibits the making of false statements . . . by a person in connection with the acquisition or attempted acquisition of a firearm . . . ." [33] The Report goes on to indicate that § 922(a)(6) is one of the "record-keeping provisions" of Title IV.[34]

■ Clearly, then, § 922(a)(6) and its companion penalty provision, § 924, impose liability upon firearms registrants who fail to tell the truth. Since Graves falsely denied having a criminal record even though he knew he had one, the application of these statutes to him would appear to be warranted. Graves is not being punished under § 922(a)(6) for being a convicted fel-

---

**31.** *See* text accompanying note 13 *supra.*

**32.** 114 Cong.Rec. 16298 (1968). (emphasis added)

**33.** H.R.Rep.No.1577, 90th Cong., 2d Sess. 13 (1968); U.S.Code Cong. & Admin.News 1968, p. 4419.

**34.** *Id.*

Our reading of the legislative history to § 922(a)(6), and of the statutory terms, comports fully with that voiced in *Huddleston v. United States,* 415 U.S. 814, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974). There the Supreme Court posited that § 922(a)(6):

"was enacted as a means of providing adequate and truthful information about firearms transactions. Information drawn from records kept by dealers was a prime guarantee of the Act's effectiveness . . . . . Thus, any false statement with respect to the eligibility of a person to obtain a firearm from a licensed dealer, was made subject to a criminal penalty."

*Id.* at 825, 94 S.Ct. at 1269. The *Huddleston* Court also ruled that § 922(a)(6) provides "adequate notice and warning of the consequences of" making false statements in "transactions covered by the Act." *Id.* at 830–32, 94 S.Ct. 1262, at 1272.

on. Rather, he is being penalized for failing to disclose his criminal record. As a result, punishment may be appropriate even though Graves argues that his prior conviction was obtained unconstitutionally.

## C. INTERPRETATIONS OF OTHER COURTS AS TO CONGRESSIONAL INTENT.

As the problems raised by the case at bar are not wholly novel ones, it is necessary to review the pronouncements of courts in other circuits that are arguably relevant here. At this stage in our analysis, we confine our consideration to those opinions which make reference to the matter of Congressional *intent.*

Two circuits have considered, in contexts that might be perceived to be somewhat related to the present one, whether Congress desired to prohibit felons from firearms use before their convictions are overturned.[35] Cursorily, both declarations as to intent might seem to be contrary to our position. In *Dameron v. United States,* the Fifth Circuit stated that it need not

> look further than the statute to determine legislative intent. The statute should explicitly set forth application to unconstitutional convictions, if it is so intended. We read the statute to prohibit the interstate transportation of firearms by those who have been *constitutionally* convicted of a felony.[36]

Subsequently, in a footnote in *United States v. Cody,* the Eighth Circuit, relying on *Dameron,* said that "the broad interpretation applied to the word 'convicted' does not extend to defendants whose prior con-

victions are invalid for error of the sixth amendment right to counsel." [37]

Graves avers that *Dameron* and *Cody* indicate that Congress did not anticipate the use of an outstanding, though assertedly unconstitutional, conviction in a firearms prosecution, even where the defendant has neglected to invalidate the prior conviction or to procure administrative relief from the weapons disability. We do not so read these two opinions.

Significantly, *Dameron* concerned a factual setting markedly different from that at hand. In *Dameron,* the felony conviction which had preceded the firearms violation later was held unconstitutional by a state court. Following that determination, the Fifth Circuit granted Dameron's motion to set aside the gun conviction. By contrast, in the present controversy, there has been no adjudication by any tribunal that Graves' larceny conviction suffers from a constitutional malady. Nor has he ever attempted to excise the weapons disability through administrative means. It has not been established that the defendant's conviction was obtained in an unconstitutional manner. As a result, it is highly questionable whether the statements in *Dameron* concerning Congressional intent deal with the questions with which we are concerned.[38]

*Cody* it appears is also inapplicable. The statement in *Cody,* as to intent, constitutes dictum, since that case did not involve an antecedent conviction that was unconstitutional, or even asserted to be so tainted. Rather, *Cody* focused on an attempt to overturn a firearms conviction when the prior criminal judgment was annulled on

---

**35.** *Dameron v. United States,* 488 F.2d 724 (5th Cir. 1974); *United States v. Cody,* 529 F.2d 564 (8th Cir. 1976).

**36.** 488 F.2d at 727.

**37.** 529 F.2d at 567 n.4.

**38.** We note that *Dameron* refers to the adage that a constitutionally infirm conviction is void *ab initio,* whereas a judgment defective for other reasons is only voidable. 488 F.2d at 725, 726. *See also, e. g., United States v. Lufman,* 457 F.2d 165 (7th Cir. 1972). And Judge Gib-

bons in his dissent places great importance on the same proposition.

Although a constitutionally deficient conviction may well be a nullity from its onset, we nonetheless believe that the "void-voidable" distinction is inapposite in the present context. For Graves has not availed himself of the various methods available to demonstrate that his conviction was void *ab initio,* but has only so alleged, after having been charged with the weapons offenses.

purely technical, nonconstitutional grounds.[39] The Eighth Circuit refused to upset the weapons violation. Moreover, the intent issue under scrutiny here really had no bearing on the outcome of *Cody*, thereby undermining Graves' attempted reliance on that case.

Even assuming as does Graves, that *Dameron* and *Cody* stand for the proposition that Congress did not intend that outstanding convictions maintained to be defective on constitutional grounds could lead to liability under the firearms statutes, we still would be disinclined to accede to such an interpretation as to the application of the Gun Control Act.

In our view, the keystone of a judicial evaluation of the design of Congress lies in painstaking examination of the Act, including the statutory framework within which it is contained, as well as the legislative history. Yet *Dameron* and *Cody* do not appear to have utilized these basic interpretative aids. Instead, each of the two opinions immediately turned to the possible constitutional impediments to such a statutory arrangement. Only after concluding that the Constitution may bar such a legislative program did the Fifth and Eighth Circuits declare that Congress could not have intended to require expungement of unconstitutional convictions as a precondition to lawful access to firearms. As *Dameron* and *Cody* delved into the constitutional concerns before grappling with the question of legislative intent, a procedure that may have been in reverse from an analytical stand-

point, we decline to follow such an approach, even assuming that Graves' evaluation of those cases is correct.[40]

For these reasons, the declarations as to legislative purpose rendered in *Dameron* and *Cody* lend little support to Graves' thesis.

We are more amenable to the asseverations of other courts concerning Congress' intent in related situations. Of these, the most noteworthy is the opinion of the Ninth Circuit in *United States v. Liles*.[41] There the Court dealt with the question whether Congress sought to impose liability under Title VII on a felon who purchased a gun pending an appeal which ultimately overturned his conviction. Liles thus found himself in the anomalous position of going to prison for a § 1202 violation, even though the prior crime was, in fact, annulled before his trial on the firearms charge.

Judge Hufstedler, writing for an unanimous panel, said:

> Both the broad language of the statute and the legislative history impel us to the conclusion that Congress intended to subject to section 1202(a)(1) all persons, not within the classes expressly exempted, who have been convicted of a felony, and (2) whose convictions have not been invalidated as of the time the firearm is possessed. Congress did not intend to exempt from section 1202(a)(1) one whose status as a convicted felon changed after the date of possession, regardless of how that change of status occurred.[42]

---

**39.** *Cody* concerned an appeal from a denial of a new trial sought on grounds of newly discovered evidence. The evidence revealed that the trial judge may have committed a technical error, specifically that he imposed sentence prior to the end of the time period authorized for filing a motion for a new trial.

**40.** We believe that our approach, *i. e.*, first dissecting the statutory terms and the legislative intent, and only thereafter examining the constitutional ramifications of that determination, is the proper one. For questions as to the constitutional validity of a statutory scheme or its application may be obviated by a "saving" interpretation of the legislative program. *See, e. g., Ashwander v. Tennessee Valley*

*Authority*, 297 U.S. 288, 348, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring); *Rescue Army v. Municipal Court*, 331 U.S. 549, 568–71, 67 S.Ct. 1409, 91 L.Ed. 1666 (1946). In the case at hand, the statutory language as well as the legislative history are such as to require discussion of the constitutional issues. *See* Part III of this opinion. However, this fact does not justify dilution of the cardinal precept of constitutional adjudication, that courts begin by engaging in careful statutory scrutiny before reaching the constitutional claims.

**41.** 432 F.2d 18 (9th Cir. 1970).

**42.** 432 F.2d at 20.

It is clear that the *Liles* court engaged in the mode of analysis—careful evaluation of the language of the statute and its legislative history—that we believe is requisite to ascertain the legislative intent.

More importantly, *Liles* would, on its face, seem to encompass the situation before us. Its holding seems to bolster our view that the legislative draftsmen did not forbid the use of outstanding convictions in firearms prosecutions against persons in Graves' predicament. Indeed, to hold that Congress wished to excuse from liability under Titles IV and VII felons whose antecedent convictions *may* conceivably be unconstitutional, while penalizing those whose convictions *actually* have been overturned for other errors, would be to accuse the draftsmen of the Act of engendering a further incongruency. There is no evidence that Congress wished to foster such disparate treatment.[43]

Every indication is that Congress wanted all persons with outstanding convictions to undergo the inconvenience of a temporary cessation of firearms use. Upon vindication of their claims respecting their rights, or upon relief by executive action, the statutory disability with respect to guns would dissolve. Hence, we conclude that Congress did approve utilization of an outstanding conviction—even one claimed to be unconstitutional—where the defendant has not attempted to render it nugatory prior to a proceeding under the Act.

### III.

Having determined that Congress intended that outstanding convictions, even those alleged to be constitutionally imperfect, could contribute to liability under the Gun Control Act, we must now consider whether there are any constitutional impediments to such a legislative program. Graves maintains that the Constitution prohibits *any* use of such convictions, invoking *Burgett v. Texas*[44] and its progeny[45] as well as opinions of several courts of appeals that have applied *Burgett* in cases somewhat similar to the one before us.[46] Because we believe that the concerns addressed in *Burgett* were of a different dimension, we decline to extend the teachings of that case to the situation here.

### A.

In *Burgett*,[47] the petitioner was indicted for felonious assault. Pursuant to state recidivist statutes, he faced greatly increased penalties because of his prior felony convictions. The trial court received one of the convictions into evidence, even though the record of the prior proceeding, on its face, indicated that the petitioner had been denied the assistance of counsel. Burgett then was sentenced under the recidivist statute. In reversing the application of that statute to him, the Supreme Court formulated the following principle:

> To permit a conviction obtained in violation of *Gideon v. Wainwright* to be used

---

**43.** Several courts of appeals have since attempted to limit the application of *Liles*, at least where unconstitutional prior convictions are in some way involved. *E. g., Dameron v. United States*, 488 F.2d 724 (5th Cir. 1974); *United States v. Lufman*, 457 F.2d 165 (7th Cir. 1972); *McHenry v. People of State of California*, 447 F.2d 470 (9th Cir. 1971). Yet none of these opinions disputes the analysis in *Liles* as to Congressional purpose. Moreover, only *Lufman* deals with a factual matrix similar to that present here—to wit, a defendant in a weapons proceeding who raises the constitutionality of a prior felony conviction, but who failed to challenge that conviction before resuming the use of firearms.

**44.** 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967).

**45.** *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *Loper v. Beto*, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972).

**46.** *Dameron v. United States*, 488 F.2d 724 (5th Cir. 1974); *United States v. Lufman*, 457 F.2d 165 (7th Cir. 1972); *McHenry v. People of State of California*, 447 F.2d 470 (9th Cir. 1971). *See also United States v. DuShane*, 435 F.2d 187 (2d Cir. 1970). *Cf. United States v. Cody*, 529 F.2d 564, 567 n.4 (8th Cir. 1976).

**47.** 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967).

against a person either to support guilt or enhance punishment for another offense . . . is to erode the principle of that case. Worse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right.[48]

Subsequently, the Supreme Court, in *United States v. Tucker*,[49] applied the *Burgett* rule with respect to sentencing and, in *Loper v. Beto*,[50] to impeachment of a defendant who had testified.

Moreover, at least one court of appeals, in deciding almost the precise issue before us, has deemed *Burgett* to be controlling. In *United States v. Lufman*,[51] the Seventh Circuit considered an appeal in a firearms proceeding, wherein the underlying felony conviction allegedly rested on an abrogation of the right of counsel. The district court had refused to dismiss the indictment, stating that even if the prior conviction was constitutionally invalid, if could not be collaterally attacked in the weapons proceeding. Relying on *Burgett* as well as *Tucker*, however, the *Lufman* Court reversed the § 1202 conviction.[52]

Based on the *Burgett* line of cases, Graves contends that, since he questioned the constitutionality of his prior conviction, the government must demonstrate the validity of that conviction before liability may attach under §§ 1202(a) and 922(a)(6). Also, he insists that an allegedly unconstitutional, though not yet invalidated, conviction cannot support guilt under the Gun Control Act. Yet we do not believe that Graves' arguments are convincing in this regard. Since the present case differs in important respects from *Burgett*, the principles enunciated in *Burgett* and its companion cases are not controlling here.

**B.**

■ Initially, we deem *Burgett* to be inapposite with respect to the conviction under § 922(a)(6), the provisions dealing with false statements in firearms transactions. The rule announced in *Burgett* does not appear to be applicable to a statute which penalizes only false representations material to and rendered during firearms transactions. As part of a comprehensive plan of firearms regulation, § 922(a)(6) creates an affirmative obligation to make full and honest disclosures. Since Graves was derelict in his duty when he refused to reveal the fact of his outstanding conviction, even assuming that it was obtained in an unconstitutional manner, imposition of the sanctions prescribed by Congress is warranted.

*Cassity v. United States*[53] supplies cogent support for our position. There, as in this case, the defendant set forth on a gun registration form the statement that he had no criminal record when, in fact, he had one. In a petition for post-conviction relief, Cassity, trying to secure the benefits of *Burgett*, asserted that his prior conviction had been obtained because he had been without the assistance of counsel. In rejecting this attempted reliance on *Burgett*, the Sixth Circuit postulated:

> We are satisfied that § 922(a)(6) compels disclosure of all convictions which have not been set aside, whether ultimately shown to have been valid or not. That section penalized [a defendant] for making a false statement. It penalizes him not for being a convicted felon, but for failing to tell the truth about the conviction.
>
> \* \* \* \* \* \*
>
> The careful statutory scheme of gun control Congress has provided would be seriously jeopardized if a person convicted of a felony could, when purchasing a fire-

---

48. 389 U.S. at 115, 88 S.Ct. at 262.

49. 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972).

50. 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972).

51. 457 F.2d 165 (7th Cir. 1972).

52. *Id.* at 167–68.

53. 521 F.2d 1320 (6th Cir. 1975).

arm, make the statement that he had never been convicted of such felony based upon his own subjective belief that his conviction was constitutionally defective where such conviction had not prior thereto been set aside. We reject petitioner's contention that this interpretation of Congressional intent in enacting § 922(a)(6) [contravenes] . . . *Burgett v. Texas.*[54]

More recently, in *United States v. Ransom,*[55] the Fifth Circuit, relying on *Cassity,* upheld a § 922(a)(6) conviction based on false statements concerning a prior felony conviction which was, in fact, adjudged unconstitutional soon after the defendant completed the Treasury form.

We subscribe fully to the principles espoused in *Cassity* and reiterated in *Ransom.* For even if Graves' prior conviction may subsequently be declared unconstitutional, it would appear that he nonetheless violated § 922(a)(6) when he lied by hiding the fact of such conviction. The registration form asks if the applicant ever had been convicted of certain crimes. It then provides an opportunity to explain the circumstances relating to any offenses on his record. For an individual to deny falsely a prior conviction, including one that is arguably defective on grounds of unconstitutionality, would call into play the penalties for mendacity in firearms transactions. In our view, there is no constitutional obstacle to punishing one who has failed to disclose an outstanding conviction, even one claimed to have abridged the Constitution.

As stated in Part IIA, it may be claimed that such an interpretation of § 922(a)(6) tangentially implicates the use of a possibly unconstitutional judgment. Yet, for reasons set forth below, primarily concerning

§ 1202, this incidental relationship, in our opinion, does not run afoul of *Burgett* and the cases that have followed it.

### C.

■ With respect to § 1202, the provision regulating the possession or receipt of firearms by convicted felons, *Burgett* is distinguishable from the case at bar for several reasons:

First, in contrast to *Burgett,* there is no obvious constitutional defect evident on the face of the record in the present case.

Second, Graves had available at least three means of attacking his prior conviction, or at least of ameliorating its effects, prior to his possession of firearms, whereas Burgett had no such recourse.

Third, *Burgett* was bottomed on a manifest abrogation of the right to counsel—a constitutional guarantee not asserted here.

We now turn to a more detailed discussion of these considerations.

### 1.

*Burgett* first is distinguishable from the case at hand because no constitutional infirmity in Graves' state conviction has yet been established, nor is any blemish apparent on the face of the record. In *Burgett* there could be no real dispute that the petitioner had lacked the assistance of counsel. The Supreme Court stated: "the certified records of the [prior] conviction *on their face* raise a presumption that petitioner was denied his right to counsel . . . and therefore that his conviction was void."[56] By contrast, it is not at all clear

---

54. *Id.* at 1323.

55. 545 F.2d 481 (5th Cir. 1977).
  It should be emphasized that *Cassity* and *Ransom* may be more akin to *Burgett* than the present appeal. For both *Cassity* and *Ransom* involved a prior conviction alleged to have been obtained without the assistance of counsel. *See* text accompanying notes 60–68 *infra.*

56. 389 U.S. at 114, 88 S.Ct. at 261. (emphasis added)

*United States v. Lufman,* 457 F.2d 165 (7th Cir. 1972), an opinion contrary to our position, also involved a purported denial of the right to counsel. *See* text accompanying notes 50–51 *supra.* However, in *Lufman,* unlike in *Burgett,* the record itself was silent as to whether the defendant had been represented by an attorney in his prior criminal proceeding.

that Graves was deprived of any constitutional right during his state trial on the auto larceny charge. Indeed, we have considerable doubt whether the state proceedings did contravene the due process clause in any respect.

Had Graves' conviction been invalidated on constitutional grounds prior to the alleged violation of § 1202, there would have been no basis for imposing the statutory disability on him. Likewise, had that disability been lifted by executive action, for constitutional or other reasons, again there would be no justification for the disability. Nevertheless, the restriction here was a continuing one, a status derived from the fact of conviction and a failure to abide by the resultant weapons prohibition. There would appear to be no ground to deem such restriction a nullity, merely because Graves, having been apprehended on the gun charges, then claimed for the first time that its source was defective.

### 2.

The second basis for distinguishing between *Burgett* and the present case rests on the divergent opportunities for other relief available to the defendants in the two instances. In *Burgett*, the prior conviction occurred long before the Texas prosecution under the recidivist statute. The petitioner had completed his sentence for the previous offense and was under no form of restraint by any state or federal authorities at the time of the trial in question. As a result, he had no opportunity or reason to challenge his outstanding criminal record in separate proceedings. Not only had the occasion for a direct appeal long passed, but he could not even bring a petition for post-conviction relief, either in a state or federal court. Therefore, the only way for Burgett to attack the prior conviction, which he

deemed to be unconstitutional, was to raise that issue during the prosecution involving the recidivist statute.

In this case, however, though he failed to so avail himself, Graves did have ample opportunity prior to the commission of the gun offenses to challenge the application of the statutory prohibition as to him. He could have petitioned the Secretary of the Treasury for an order relieving him of his disabled status,[57] or requested a pardon specifically restoring his privilege to handle arms.[58] Moreover, Graves could have sought habeas relief from the conviction that he believed suffered from a constitutional ailment. For it appears that he still was under the supervision of state authorities, as a result of his larceny conviction, when he ignored the firearms disability.[59] Because Graves had available these various avenues with which to free himself from the requirements of the Gun Control Act and the consequences of an assertedly unconstitutional conviction, whereas Burgett had no such opportunity to challenge the application to him of the recidivist statute, it would not appear to be appropriate to apply *Burgett* to the factual configuration here.

Graves was prosecuted for his failure to observe what may be a temporary disability imposed upon him by the Gun Control Act. If he believed his prior conviction to be constitutionally defective, he could have proceeded, in any number of ways, to have the conviction annulled or to mitigate its effects. All the statute mandates is that, so long as a prior conviction is outstanding, such an individual refrain from handling guns. Inasmuch as Graves did not comply with the dictates of the Gun Control Act, and in no way sets forth any explanation for his refusal to so comply, we believe that, despite *Burgett*, he is subject to the penalties of the Act.

---

**57.** *See* 18 U.S.C. § 925(c).

**58.** *See* 18 U.S.C. § 1203(2).

As indicated earlier, *see* Parts IIA and IIB *supra*, the Gun Control Act expressly suggests such executive action as a mode of erasing a gun prohibition. Presumably, assertions re-

specting the constitutionality of a prior conviction could be considered by the Secretary or any pardoning authority in evaluating a request for restoration of firearms use.

**59.** Trial Transcript at 26.

### 3.

Finally, it is questionable whether *Burgett* governs the constitutional right that Graves raises in this appeal. As discussed earlier, Graves alleges that his prior state conviction denied him due process, contending that the hearing which resulted in the transfer of his case from juvenile court was contrary to procedures mandated in *Kent*. By contrast, in announcing the *Burgett* rule, the Supreme Court was concerned specifically with the Sixth Amendment right to counsel. Indeed, the Court has applied *Burgett* only in cases involving that fundamental guarantee,[60] and has declined to do so where other rights have been concerned, despite opportunities to broaden its holding.[61]

It is clear that *Gideon v. Wainwright*,[62] the landmark articulation of the right to counsel, constituted the foundation of *Burgett*. Besides enunciating the rule that a "conviction obtained in violation of *Gideon* [may not] be used against a person either to support guilt or enhance punishment for another offense,"[63] the Supreme Court expressly rendered its decision in *Burgett* so that *Gideon* would not "suffer serious erosion."[64] Thereafter, in both *Tucker* and *Loper*, the Supreme Court reaffirmed that *Burgett* essentially was a "sequel" to or gloss on *Gideon*.[65] Since *Burgett* has been inextricably linked to *Gideon* by the Supreme Court, we are reluctant to extend its holding to the type of constitutional infringement alleged by Graves. This is particularly the case because no compelling reason for doing so has been advanced.[66]

The temptation to extend rights to their logical margins frequently is difficult to resist, and we recognize that this appeal affords an alluring opportunity for such extension. However, the fact is that the judicial process, to a considerable extent, consists of line drawing.[67] We believe that *Burgett* does constitute a line of demarcation across which we should not traverse, absent the imprimatur of the Supreme Court. Such a stance would appear to be proper where to do so would conflict with the legislative design of Congress.

At present, then, *Burgett* would not seem to stand as an impediment to the use of an outstanding criminal conviction as an antecedent to firearms violations, especially where the defendant challenges the constitutionality of the prior conviction on grounds other than a denial of counsel and previously has refused to avail himself of ample opportunities to eradicate the weapons disability.[68]

---

**60.** We recognize that several other courts of appeals have applied *Burgett* to prior convictions obtained through denials of constitutional rights other than the right to counsel. *E. g., United States v. Martinez*, 413 F.2d 61, 63 (7th Cir. 1969) (involuntary guilty plea); *Beto v. Stacks*, 408 F.2d 313, 316 (5th Cir. 1969) (Fourth Amendment violations). *But see United States v. Penta*, 475 F.2d 92 (1st Cir. 1973) *cert. denied*, 414 U.S. 870, 94 S.Ct. 89, 38 L.Ed.2d 88 (1973) (rejecting *Beto v. Stacks*). Even so, for the reasons presented in the text of our opinion, we decline to follow the example of those courts which have extended *Burgett*.

**61.** *See, e. g., United States v. Penta*, 475 F.2d 92 (1st Cir.), *cert. denied*, 414 U.S. 870, 94 S.Ct. 89, 38 L.Ed.2d 88 (1973).

**62.** 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

**63.** 389 U.S. at 115, 88 S.Ct. at 262.

**64.** *Id.* at 116, 88 S.Ct. 258.

**65.** *See, e. g.,* 405 U.S. at 481, 92 S.Ct. 1014.

**66.** In light of *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), there would appear to be some doubt whether the Supreme Court would extend the *Burgett* rule to encompass all, or any, Fourth Amendment violations especially in the context of a collateral attack.

**67.** The Supreme Court frequently has admonished the courts of appeals and district courts not to expand legal rules and rights in an insouciant fashion. *See, e. g., United States v. 12 200-Ft. Reels of Film*, 413 U.S. 123, 127, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1972); *Hudson County Water Co. v. McCarter*, 209 U.S. 349, 355, 28 S.Ct. 529, 52 L.Ed. 828 (1908).

**68.** It may be that a court might rule otherwise where a defendant claims a denial of counsel. At least one commentator has declared: "Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive, for it affects his ability to assert any other rights he may have." Schaefer, *Federal-*

### D.

As a final point, we recognize that to extend *Burgett* to prosecutions under the Gun Control Act might well create a new method of collateral attack, *i. e.*, a reevaluation of the constitutionality of prior criminal proceedings within a trial of a weapons offense. To obtain a firearms conviction, under the approach pressed by Graves, the government would have to demonstrate the constitutional validity of outstanding convictions—at whenever a defendant so insists. Yet, there is no evidence that Congress intended this type of procedure—a "trial-within-a-trial"—when it enacted the firearms legislation. Nor is there anything in *Burgett* or its descendants to indicate that the Supreme Court commanded such an arrangement. Consequently, this Court should not sanction a program which appears to be at variance with the intent of Congress and goes a substantial step beyond the teachings of *Burgett*.

How best to reconcile the competing interests that emerge here—the interest of Graves to attack collaterally, at any time, an alleged constitutional infirmity, as distinguished from requiring him to challenge the predicate conviction before possessing a weapon—would appear to be within the province of the legislature. And the balance that Congress strikes in this regard is a decision not lightly to be displaced by that of this Court, unless it is outside the pale of fair judgment or reason.[69]

The convictions of the defendant will be affirmed as to both counts.

GARTH, Circuit Judge, concurring in part and dissenting in part.

The majority opinion of the Court sustains Graves' conviction on both the § 922(a)(6) count and the § 1202(a) count, by giving the same reading to both statutes despite the marked difference in their wording and thrust. The dissent, on the other hand, would reverse Graves' conviction on both counts by similarly reading the two statutes together (although it arrives at a result contrary to that of the majority) —again, despite the marked difference in their wording and thrust.

I am obliged to disagree in part with both my brothers in the majority and those in the dissent because I perceive no basis in reason, logic or precedent to require an identical interpretation of both statutory enactments. The substantial differences between § 922(a)(6) and § 1202(a),[1] I believe, warrant our affirming Graves' conviction under § 922(a)(6) and reversing his conviction under § 1202(a).

### I.

I note first that my research has not disclosed any case other than this one which has implicated the construction of both these statutes in the instant context.[2] Nor have I found any individual cases within the same Circuit which have interpreted

---

*ism and State Criminal Trials*, 70 Harv.L.Rev. 1, 8 (1956). Even so, the reasons outlined for circumscribing *Burgett* possibly may be applicable in a sixth amendment context.

**69.** It may be contended, on behalf of the position advanced by Graves, that our reading of the Gun Control Act and of *Burgett* impermissibly operates to delay or even forestall the duration of alleged deprivations of constitutional rights. However, we believe that Congress has the power to establish reasonable remedial alternatives to immediate vindication of constitutional rights by federal courts. It has done so, for example, in a context somewhat related to that at hand—habeas corpus. Should a habeas petitioner neglect to pursue the procedures mandated by 28 U.S.C. § 2254(b), including exhaustion of his state remedies, his contentions respecting his constitutional rights, ex-

cept in unusual situations, may not be entertained by the federal courts. The Supreme Court has not questioned the power of Congress to impose such procedural preconditions to the vindication of constitutional claims, even when they postpone such consideration. *See, e. g., Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); *Brown v. Allen*, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953).

**1.** *See, e. g., United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971).

**2.** *United States v. Fryer*, 545 F.2d 11 (6th Cir. 1976) discussed convictions under both 18 U.S.C. § 922(a)(6) and 18 U.S.C. App. § 1202(a), but not in the context here presented.

§ 922(a)(6) and § 1202(a) in identical fashion. Hence, at this juncture I have seen no reasoned authority of any court which has dispositively held, or even suggested, that both statutes must be construed so as to require the same result, whether that result would fall on the side of the majority in this case, or on the side of the dissent.

Just as some courts have held that § 922(a)(6) is a regulatory statute (in accordance with the majority's holding here),[3] others have held that *Burgett v. Texas*[4] must be read into § 922 and would require proof by the government that the underlying conviction implicated in a § 922(a)(6) indictment was a constitutional conviction.[5] The same conflict exists with respect to holdings interpreting § 1202(a).[6]

With these observations as a preface, I feel free to record my own view that an identical reading of both statutes is not required, even though both may have originated with the Omnibus Crime Control Act of 1968, and hence there need be no symmetry in our disposition of Graves' convictions under the two counts.[7]

## II.

I read the majority opinion as intimating (albeit ever so slightly) that perhaps a result different from that which it reaches in § 922(a)(6) cases could be reached in a § 1202(a) case,—that is: that a defendant liable for nondisclosure of a felony conviction under § 922(a)(6) could nonetheless defend against § 1202(a) charges by urging the invalidity of that underlying conviction. Although the majority obviously does not so

conclude, it nevertheless strains to distinguish Supreme Court precedent and to glean encouragement from the spare and uninformative legislative history in order to support its conclusion that both statutes should be construed alike. The dissent, by contrast, concentrates its attention on § 1202, apparently recognizing the difficulty in refuting the statutory mandate of § 922(a)(6), which simply punishes material nondisclosures.[8]

18 U.S.C. § 922(a)(6) prohibits the making of false or fictitious oral or written statements intended or likely to deceive, with respect to any fact material to the lawfulness of a firearms sale. Nowhere in § 922(a)(6) itself does the term "prior conviction" appear. To implement this section of the statute, reference must be made to matters extrinsic to the specific provision itself. In this case, the firearms dealer required Graves to complete and sign Treasury Form 4473, which included a series of questions for Graves to answer. The certificate appears as follows in pertinent part: [9]

8. Certification of Transferee (Buyer) —an untruthful answer may subject you to criminal prosecution. Each question must be answered with a yes or no.

a. Are you under indictment in any court for a crime punishable by imprisonment for a term exceeding one year? *NO*

b. Have you been convicted in any court of a crime punishable by imprisonment for a term exceeding one year?

3. *Cassity v. United States*, 521 F.2d 1320 (6th Cir. 1975).

4. 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967).

5. *United States v. Cody*, 529 F.2d 564, 567 n. 4 (8th Cir. 1976) (*dictum*); *United States v. Megura*, 394 F.Supp. 246 (D.Conn.1975).

6. Cases not applying *Burgett v. Texas* in a § 1202 context: *United States v. Liles*, 432 F.2d 18 (9th Cir. 1970). Cases applying *Burgett v. Texas* in a § 1202 context: *United States v. Lufman*, 457 F.2d 165 (7th Cir. 1972); *United States v. DuShane*, 435 F.2d 187 (2d Cir. 1970);

*United States v. Thoresen*, 428 F.2d 654 (9th Cir. 1970).

7. *Cf. United States v. Bass*, 404 U.S. 336, 343–44, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971) (differing tests for "in commerce or affecting commerce" under §§ 922 and 1202(a)).

8. *See Huddleston v. United States*, 415 U.S. 814, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974) for a discussion of § 922(a)(6) generally.

9. Graves' answers, which appear in handwritten form on the original of this document, appear here capitalized and italicized.

(Note: The actual sentence given by the judge does not matter— a yes answer is necessary if the judge could have given a sentence of more than one year.) *NO*

c. Are you a fugitive from justice? *NO*

d. Are you an unlawful user of, or addicted to, marihuana or a depressant, stimulant, or narcotic drug? *NO*

e. Have you been adjudicated mentally defective or have you ever been committed to a mental institution? *NO*

f. Have you been discharged from the Armed Forces under dishonorable conditions? *NO*

g. Are you an alien illegally in the United States? *NO*

h. Are you a person who, having been a citizen of the United States, has renounced his citizenship? *NO*

I hereby certify that the answers to the above are true and correct. I understand that a person who answers any of the above questions in the affirmative is prohibited by Federal law from purchasing and/or possessing a firearm. I also understand that the making of any false oral or written statement or the exhibiting of any false or misrepresented identification with respect to this transaction is a crime punishable as a felony.

Despite the statement in the Majority Opinion (Maj. Op. p. 70) that the Treasury Department requires completion of Form 4473, I believe that it is significant that Congress in enacting § 922(a)(6), did not prescribe the use of this or any other form.[10] For all that appears in § 922(a)(6), some or all of these questions could be asked orally or could be included in a form of the seller's own devise. Further, the

legend that appears at the foot of section 8 of the form gives clear and unmistakable warning of the consequences that may follow a false statement.[11]

It is clear to me, as it is to the majority of this Court, that § 922(a)(6) is concerned *not with the status* of a convicted felon as that status may affect his future activities, but rather with the requirement that a firearms purchaser divulge truthful, essential information.[12] One portion of that information concededly concerns any prior conviction. At least on the form signed by Graves, however, there are seven other categories about which information was sought and which could trigger criminal sanctions if answered untruthfully. The nub of the offense sought to be proscribed here is lying. Graves had it completely within his power at the time of his purchase to avoid all criminal sanction by the mere expedient of answering truthfully.

The language of § 922(a)(6) is crystal clear on its face.[13] In essence, all that need be shown in a § 922(a)(6) prosecution is that a knowing false statement was made, whether that statement pertained to the defendant's underlying conviction or to one of the other matters enumerated in Treasury Form 4473, if that form is employed by the seller. To import implied concepts qualifying the nature of the falsehood of which the defendant stands accused would in my view thwart the explicit terms as well as the objective of this enactment.

I believe, as Judge Adams does in writing for the majority, that § 922(a)(6) accomplishes the regulation of the manner by which firearms can be acquired. The activity regulated should be viewed as of the discrete time when the acquisition takes place. At that time, Graves was either under indictment or not. He had either been convicted of a crime punishable by imprisonment for a term exceeding one year, or he had not,—and this whether his

10. *Cf. Barrett v. United States*, 423 U.S. 212, 213 n. 2, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976).

11. The Supreme Court, in discussing § 922(a)(6) as it may be implemented by the use of Treasury Form 4473, has emphasized the "fair warning of the sanctions the law place[s]

on that [proscribed] conduct." *Huddleston v. United States*, 415 U.S. at 831, 94 S.Ct. at 1272.

12. *See* Maj. Op. at 70–71.

13. *Huddleston v. United States*, 415 U.S. at 831, 94 S.Ct. 1262.

conviction was constitutional or unconstitutional. He was either a fugitive from justice at that time, or he was not. He either used narcotics at that time or he did not. He either had been adjudicated mentally defective, or committed to a mental institution at that time, or he had not. (*See* pp. 84–85 *supra*, Treasury Form 4473). Each of these questions, including those pertaining to his army discharge and citizenship, were susceptible of answers within the knowledge of Graves at the very moment his firearms purchase was made. If Graves answered falsely, punishment could follow.

One final observation seems in order. In *Huddleston v. United States*, 415 U.S. 814, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974), the Supreme Court affirmed a § 922(a)(6) conviction for a false statement made in the course of a pawn redemption of firearms. Among the arguments made to the Supreme Court was petitioner's contention that § 922(a)(6)'s applicability to pawn redemptions was "so ambiguous and uncertain that the statute should be narrowly construed in his favor." *Id.* at 830, 94 S.Ct. at 1271. Although the Court acknowledged the need to construe penal laws strictly, *id.* at 831, 94 S.Ct. 1262, it rejected this contention argued by petitioner.

Nonetheless, the Court's reasoning is instructive for present purposes. The Court first analyzed the basis for the rule of lenity:

> This rule of narrow construction is rooted in the concern of the law for individual rights, and in the belief that *fair warning should be accorded as to what conduct is criminal* and punishable by deprivation of liberty or property. (Emphasis supplied.)[14]

The Court then dealt with petitioner's contention in the context of § 922(a)(6).

> We perceive no grievous ambiguity or uncertainty in the language and structure of the Act. The statute in question clearly proscribes petitioner's conduct and accorded him fair warning of the sanctions the law placed on that conduct. Huddleston was not short of notice that his actions were unlawful. The question he answered untruthfully was preceded by a warning in boldface type that "an untruthful answer may subject you to criminal prosecution." The question itself was forthright and direct, stating that it was concerned with conviction of a crime punishable by imprisonment for a term exceeding one year and that this meant the term which could have been imposed and not the sentence actually given. Finally, petitioner was required to certify by his signature that his answers were true and correct and that he understood that "the making of any false oral or written statement . . . with respect to this transaction is a crime punishable as a felony." This warning also was in boldface type. Clearly, petitioner had adequate notice and warning of the consequences of his action.

*Id.* at 831–32, 94 S.Ct. at 1272. Thus the Court found that § 922(a)(6) as implemented through the use of Treasury Form 4473 (the same form completed by Graves here), operated so as to afford Huddleston adequate notice and warning of the consequences of nondisclosure.

To require the government to prove at trial that the predicate conviction was a constitutional conviction (1) when the statute by its terms does not even refer to conviction; (2) when the purchaser may or may not have been asked about his prior convictions;[15] (3) when the purchaser, as in the case of Graves, had "adequate notice and warning"; and (4) when the only sanction that can be imposed if such question was asked and then answered affirmatively is the refusal to sell a firearm, would be to import a construction into § 922(a)(6) which

---

14. *Id.* at 831, 94 S.Ct. at 1272, *citing, inter alia,* *United States v. Bass*, 404 U.S. 336, 348, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971) (discussing the problems of notice and "fair warning" in construing § 1202(a)).

15. The firearms dealer may suffer consequences for failure to ask such a question under § 922(d)(1), but, as noted earlier, no specific requirement appears in § 922(a)(6) concerning an acquirer's prior criminal convictions.

denies the plain meaning of the statute's language.[16]

### III.

Although I agree that appellant's conviction for nondisclosure of a felony conviction under § 922(a)(6) must be affirmed, in my opinion the same result does not obtain with respect to the § 1202(a) count. Under § 1202(a) it is the *status* of the individual, not his affirmative act of furnishing information which determines his permissible "firearm" activity. The statute itself, unlike § 922(a)(6), contains as an integral element the requirement of a prior felony conviction. To prosecute and obtain a conviction under § 1202(a), the government must prove the element of a prior conviction just as it must prove the interstate nexus required by the statute.[17] The question then arises, what is the quality of the conviction to be proved? Will a prior conviction, obtained unconstitutionally, suffice, particularly where the reach of the statute is as broad as that of § 1202(a)?

*United States v. Bass,*[18] in discussing the same statute, albeit in a different context, held that § 1202 (a part of Title VII of the Omnibus Crime Control and Safe Streets Act of 1968) could be interpreted differently from those sections appearing in Title IV, including § 922; moreover, it required that § 1202(a) be narrowly construed, as the defendant there had urged.[19] The approach to § 1202(a) taken in *Bass,* coupled in this case with the Supreme Court's pronouncements in *Burgett v. Texas,*[20] *United States v. Tucker,*[21] and *Loper v. Beto,*[22] satisfy me that § 1202(a) does *not* by its terms, objective or intendment fall within the regulatory ambit to which it is consigned by the majority.

I believe, as does Judge Gibbons writing in dissent, that § 1202(a) requires that the underlying felony conviction be a *constitutional* conviction. Although I need not elaborate upon Judge Gibbons' discussion of § 1202(a), I do find it necessary to comment on several aspects of the majority's § 1202 discussion in order to show the extent of my disagreement with its reasoning.

I find unconvincing the majority's assertion that *Burgett v. Texas, supra,* is not controlling on the § 1202(a) charge. Initially, I find an even closer relationship existing between the prior conviction and liability in this case than that which obtained in *Burgett.* Burgett could have been tried and convicted (albeit not under a recidivist statute) for assault with intent to murder, even without any previous felony convictions. Graves, however, could not have been prosecuted for any offense, much less an offense under § 1202(a), in the absence of his controverted felony conviction.

Nor do I perceive any persuasive rationale which would limit the rule of *Burgett v. Texas* to convictions obtained against defendants deprived of the right to counsel. *Burgett* rests upon *two* bases. The first, and the one which the majority emphasizes to the total exclusion of the other, is to prevent erosion of the principle enunciated in *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Maj. Op. at 82. More generally, however, *Burgett* was intended to prevent the accused from suffering anew from the deprivation of his rights. Proper consideration of this second basis compels the conclusion that no principled distinction exists, at least for purposes of the *Burgett v. Texas* rule, between Fourth, Fifth, Sixth, or Fourteenth Amend-

16. *Huddleston v. United States, supra,* 415 U.S. at 831, 94 S.Ct. 1262.

17. *United States v. Bass,* 404 U.S. 336, 339–51, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971).

18. 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971).

19. *Id.* at 347–49, 92 S.Ct. 515.

20. 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967).

21. 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972).

22. 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972).

ment violations.[23] Quite simply, like Judge Gibbons in dissent, I cannot distinguish between different unconstitutional convictions in this context. Accordingly, I would conclude that *Burgett* does indeed govern the constitutional rights set forth by the Supreme Court in *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), and here asserted by Graves.

The majority also rests its conclusion that *Burgett* is inapplicable to the present case on the fact that no violation of Graves' *Kent* rights has been established nor is such violation apparent on the face of the record (Maj. Op. pp. 80–81). I believe this argument confuses two distinct and separable questions: (1) Is the rule of *Burgett v. Texas* generally applicable to Gun Control Act cases? And (2) if the rule is applicable, is there a constitutional violation present which would trigger application of the rule in the instant case? The majority opinion addresses itself to the second question while purporting to consider the first. I note that the district court concluded that the *Burgett* rule could not be extended to the denial of *Kent* rights, *United States v. Graves*, D.C., 394 F.Supp. 429 at 433, and hence it had no occasion to consider whether Graves' state court conviction was constitutionally valid. Similarly, the second question need not be considered by this Court now. Our concern should be addressed to the primary question of the applicability of *Burgett v. Texas*. I see no reason to consider an issue analytically inapposite to what should be our central inquiry, in the guise of considering the applicability of *Burgett*, and hence I am obliged to reject the majority's attempt to distinguish this case from *Burgett* on this basis.

As I have observed earlier, the Supreme Court in discussing § 922(a)(6) and finding it clear and free from ambiguity has focused on the notice and warning which that section, as implemented, provides to one acquiring a firearm. By comparison, the notice and warning accorded under § 1202(a) is minimal. As earlier noted, Section 1202(a) looks only to the *status* of the individual and not to his immediate acts.

Where the status of "felon"—as opposed to the nondisclosure of a felony conviction—assumes such importance, I believe, as does the dissent, that it is incumbent upon the government under *Burgett* and *Kent* to prove the constitutional validity of the predicate convictions which, it contends, confers that status.

## IV.

Accordingly, I subscribe wholly to Parts I, II, III and V of Judge Gibbons' dissent as they bear upon the use of unconstitutional convictions under § 1202(a)—just as I join Judge Adams in his discussion of § 922(a)(6). Having concluded, therefore, that it is consistent with the statutory mandate to treat both § 922(a)(6) and § 1202(a) as they are drawn [24] and to give to each a meaning consistent with its particular objective, I would affirm Graves' conviction under § 922(a)(6) (Count I) and would reverse his conviction under § 1202(a) (Count 2).

SEITZ, Chief Judge, joins in this opinion.

GIBBONS, Circuit Judge, with whom ALDISERT, Circuit Judge, joins, dissenting:

## I

In its initial brief in this case the United States urged:[1]

The government does not disagree with much of the law cited in the defendant's brief. If a prior conviction is void *ab initio* because of a constitutional defect it cannot be used to enhance punishment under a recidivist statute, *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), nor to influence the imposition

---

**23.** I do not mean to suggest that no principled distinction exists for purposes *other than* the *Burgett v. Texas* rule. *See, e. g., Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (Fourth Amendment).

**24.** *See United States v. Bass, supra.*

**1.** Brief for Appellee at 7.

of sentence, *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), nor to impeach the credibility of a defendant at his trial, *Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972). We would also agree that if a defendant can show that his prior conviction was void *ab initio,* rather than voidable, such conviction cannot be used to supply the necessary element of a conviction of a prior felony in a trial for a subsequent federal firearms violation. *Dameron v. United States,* 488 F.2d 724 (5th Cir. 1974).[2]

[2] Dameron cites a plethora of cases for this proposition including *Pasterchik v. United States,* 466 F.2d 1367 (9th Cir. 1972); *United States v. Lufman,* 457 F.2d 165 (7th Cir. 1972); *McHenry v. California,* 447 F.2d 470 (9th Cir. 1971); *United States v. Thoresen,* 428 F.2d 654 (9th Cir. 1970); and *United States v. DuShane,* 435 F.2d 187 (2nd Cir. 1970).

Thus it has been the government's position from the start, a position not changed before the court in banc, that a constitutionally void conviction could not be used to supply an element of the offense of a federal firearms violation. What the government has urged is that there is a distinction between "void" convictions in which the constitutional defect went to the integrity of the fact-finding process,[2] and "voidable" convictions in which the defect, while of constitutional dimensions, did not implicate the fact-finding process.[3]

The panel which considered this appeal in the first instance did not accept that distinction. The present majority's position on this particular issue is unclear.[4] But what is clear is that the majority has rejected the government's own construction of the statutes in issue.[5]

When the appeal was before the panel we wrote:

**2.** *E. g., Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967); *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972).

**3.** *E. g., Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

**4.** *See* Part III of Majority Opinion.

We construe 18 U.S.C. §§ 992(h) and 1202(a)(1) to refer to constitutionally valid convictions. We do so because we have been referred to no legislative history suggesting that Congress intended the word "convicted" in either section to mean "unconstitutionally or constitutionally convicted." (Footnote omitted).

Part II of the majority opinion concedes that "the applicable legislative record is somewhat limited in scope and does not speak directly to the precise issues raised in this case."[6] Nevertheless, that opinion industriously recreates an intention on the part of Congress to make the statutes applicable even to felons unconstitutionally convicted. With equal industry, by rearranging the same scanty materials, an argument could be constructed pointing in the other direction. But in the face of conceded ambiguity, requiring extensive exegesis, the maxim of statutory construction which should carry the day is that unclear statutes should be construed in a manner which avoids the necessity for constitutional adjudication.[7] Instead, the majority opts for a construction which compels such an adjudication; a construction not even insisted upon by the government.

Conceding that we are not bound by an erroneous executive branch interpretation of legislation, nevertheless, it is at least noteworthy that in this instance the majority is ready to reach for a broader ground of decision than that urged upon us by the appellees. It is also noteworthy that in doing so the majority is willing to read Congressional intention broadly while giving a crabbed interpretation to the pronouncements of the Supreme Court in *Burgett v. Texas, supra; United States v. Tucker, supra;* and *Loper v. Beto, supra.* The majority urges that "[t]he temptation

**5.** *See* Part II of Majority Opinion.

**6.** *Id.* at 73.

**7.** *Cf. Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 341, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring); *Rescue Army v. Municipal Court,* 331 U.S. 549, 568–71, 67 S.Ct. 1409, 91 L.Ed. 1666 (1946).

to extend rights to their logical margins frequently is difficult to resist. . . ."[8] There has, however, been no recently discernible tendency in this court to yield to so terrible a temptation. Nevertheless, I think that when Supreme Court authority is logically controlling we are bound thereby.

## II

Before the original panel and again before the court in banc the government urged that Graves' conviction should be affirmed because he failed to prove that his prior felony conviction was constitutionally defective. That position was a fallback from its primary "void" versus "voidable" position. In effect, the government urged that this court impose on the defendant a burden of proof with respect to an element of the government's case. It was never urged that if a "void" conviction were put in issue in a firearms violation case its validity could not be litigated.

The original panel, having rejected the void-voidable distinction, also rejected the government's "burden-shifting" argument on due process grounds.[9] The majority does not reach this due process issue because it holds that the validity of such an extant felony conviction may not even be considered as a defense to a federal firearms charge. As with the construction of the statutes, it has given the government more than was sought.

The majority also urges that requiring the government to shoulder its burden of establishing all elements of a criminal case beyond a reasonable doubt would create a new method of collateral attack.[10] That reasoning is utterly specious when applied

to the government's use of a constitutionally void judgment as an element of a criminal offense. The defendant is not initiating a collateral attack. He is only asking to be left alone.

The majority's reasoning is also starkly revelatory of a difference in perception of the role of the federal judiciary in a democracy organized on separation of powers principles. Trials within trials are a nuisance. But no government needs judges in order to engage in sanctioning. A democratic government, however, does need judges in order to legitimize its sanctioning. Admittedly, there is room for appropriate concern about the extent to which the federal government has strained the resources of the federal judicial branch by a disproportion between offenses to be tried and available manpower. But if the federal courts are to retain a reputation for integrity, which is their sole badge of legitimating authority, they cannot sweep under the rug their participation in giving ongoing effect to unconstitutional convictions merely because making an appropriate inquiry would take time. And we find completely unacceptable the suggestion that the availability of executive branch clemency pursuant to § 925(c) discharges us of our judicial responsibility.[11]

The majority has the policy perspective inverted. Certainly there must be some unconstitutional convictions that involve "such dirty business" that no court should participate in giving them ongoing effect.[12]

## III

The government conceded before the original panel that a conviction obtained

8. Majority Opinion at 82.

9. In support of this holding the panel opinion relied on the following cases: *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Holland v. United States,* 348 U.S. 121, 138, 75 S.Ct. 127, 99 L.Ed. 150 (1954); *Leland v. Oregon,* 343 U.S. 790, 795, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952); *Brinegar v. United States,* 338 U.S. 160, 69

S.Ct. 1302, 93 L.Ed. 1879 (1949); *Davis v. United States,* 160 U.S. 469, 488, 16 S.Ct. 353, 40 L.Ed. 499 (1895).

10. Majority Opinion at 83.

11. Majority Opinion at 72–73.

12. *See Olmstead v. United States,* 277 U.S. 438, 470, 48 S.Ct. 564, 72 L.Ed. 944 (1928) (Holmes, J., dissenting).

without counsel was "void" and could be collaterally attacked in the firearms prosecution. It argued, however, that a violation of the rule of *Kent v. United States,*[13] 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), while of constitutional dimensions, made the resulting conviction merely "voidable." In rejecting that argument the panel reasoned:

> The rule announced in *Burgett v. Texas, supra,* cannot, as the district court assumed, be restricted to convictions obtained against defendants deprived of the right to counsel. It would be unthinkable that the government could, in obtaining a federal conviction, rely, for example, on a prior conviction obtained by use of a coerced confession. It would be equally unthinkable, particularly when the prior offense is an element of the federal crime, that the government could, in proving the crime, rely on a prior conviction based upon an illegal search or wiretap. We have not been informed of any considerations of social policy or even any plausible arguments which would support a principled distinction, for purposes of the *Burgett v. Texas* rule, between fourth, fifth, sixth, or fourteenth amendment violations. We hold that a *Kent* violation, implicating as it does significant due process rights in addition to the right to counsel, falls squarely within the prohibitions of *Burgett v. Texas, supra; United States v. Tucker, supra;* and *Loper v. Beto, supra.*

The majority opinion discusses *Burgett v. Texas, supra,* at some length. At one point the opinion attaches significance to the fact that *Burgett* was a right to counsel case.[14] But elsewhere it qualifies any such significance by the broad hint, if not plain prediction, that even a felony conviction of an uncounselled defendant would support a firearms conviction and could not be collaterally attacked in such a prosecution.[15] Moreover, the overall reasoning of Part III

makes plain the majority viewpoint that the status of a convicted felon is alone sufficient to justify the statutory "disability" regardless of the legitimacy of the prior felony conviction.

Thus the majority has not merely rejected the reasoning of the original panel, which declined to accept the government's tendered distinction between the Sixth Amendment right to counsel and other Fourth, Fifth or Fourteenth Amendment rights. Instead, it has said that no constitutional violation is an appropriate subject of collateral attack in a firearms violation prosecution.

The majority has gone out of the way to refer explicitly to the Fourth Amendment,[16] but its reasoning is equally applicable to a conviction obtained by use of a coerced confession. This reasoning tacitly concedes the point made in the panel opinion that no considerations of social policy, or even any plausible arguments, would support the distinction which the government urges. However, instead of recoiling from the prospect that it would legitimize a sanction imposed by virtue of a conviction obtained by use of a coerced confession, or other constitutional violations, the majority enthusiastically embraces that extreme position. Even if *Burgett v. Texas, supra; United States v. Tucker, supra;* and *Loper v. Beto, supra,* had never been written I would find that embrace distasteful. In the face of those authorities the majority holding is plainly erroneous, at least with respect to the receiving and possession charge.[17]

## IV

The panel opinion construed the references to convictions in 18 U.S.C. § 922(h) and 18 U.S.C. App. § 1202(a)(1) to refer to constitutionally valid convictions. Because the "false statement" provisions of 18

13. See Majority Opinion at 68 n. 6.

14. *Id.* at 87.

15. *Id.* at 82–83 n. 68.

16. *Id.* at 42, n. 23.

17. 18 U.S.C. App. § 1202.

U.S.C. §§ 922(a)(6) [18] and 924(a),[19] cross-reference, respectively, to "fact[s] material to the lawfulness of the sale" and to "information required by the provisions of this chapter to be kept," the panel concluded that the statement provisions required disclosure only of convictions referred to in the receiving and possession section—§ 1202(a)(1). There is no language in the Omnibus Crime Control and Safe Streets Act of 1968,[20] or the Gun Control Act of 1968,[21] suggesting that the cross-references in §§ 922(a)(6) and 924(a), were intended to be read apart from the statutes' substantive prohibitions.

One could, by a process of statutory redrafting, turn those sections into requirements for the disclosure of information whether or not material to the legality of the receipt or possession of the firearms. Such a reading, however, would ignore the language "material to the lawfulness of the sales." The majority's analysis does not turn, however, on whether § 922(a)(6) and § 924(a) cross-reference to the substantive prohibitions against receiving or possession. For the majority has construed § 1202(a) to be applicable even to felons in that status by virtue of unconstitutional convictions.

Obviously if that was the Congressional intention, disclosure of both constitutional and unconstitutional convictions would be material. However, in light of *Burgett v. Texas* and its progeny, I seriously doubt that Congress may constitutionally attach a continuing disability to the status of an unconstitutionally convicted felon. Could Congress, for example, pass a statute over-

ruling *Burgett?* And in the absence of any explicit statutory language or legislative history, I would not attribute to Congress such an intention. Separating §§ 922(a)(6) and 924(a) from the substantive provisions to which they cross-reference, and treating them as independent reporting requirements, requires too much reconstruction for a criminal statute. If I believed that § 922(a)(6) and § 924(a) imposed independent reporting requirements I would agree that a conviction on Count I would be constitutional—but I do not so believe.

V

Because the majority holds that the constitutional validity of an unexpunged felony conviction may not be put in issue in a federal firearms prosecution it does not reach the question of burden of proof on that issue. The original panel concluded that the judgment of sentence should be reversed. It reasoned:

Since there would be no offense under either count of the indictment in the absence of a valid conviction, proof of such a conviction is an element of the government's case. That element can ordinarily be satisfied by evidence of the record of a prior conviction. But where, as here, the validity of that offense has been put in issue, the burden shifts to the government to prove that it was not invalid on the grounds which have been put in issue or that the defendant waived his constitutional rights.[22] The precise issue of the

18. 18 U.S.C. § 922 provides:
   (a) It shall be unlawful—
   (6) for any person in connection with the acquisition . . . of any firearm . . . from a licensed . . . dealer . . . knowingly to make any false or fictitious oral or written statement . . . intended or likely to deceive such . . . dealer . . . with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter.

19. 18 U.S.C. § 924(a) provides:
   Whoever . . . knowingly makes any false statement or representation with respect to the information required by the pro-

visions of this chapter to be kept in the records of a person licensed under this chapter, . . . shall be fined not more than $5,000, or imprisoned not more than five years, or both, and shall become eligible for parole as the Board of Parole shall determine.

20. Pub.L. 90–351, 82 Stat. 197 (codified in scattered sections of 5, 18, 18 App., 28, 42, 47 U.S.C.).

21. Pub.L. 90–18, 82 Stat. 1213 (codified in scattered sections of 18, 18 App., 26 U.S.C.).

22. *United States v. Lufman,* 457 F.2d 165, 166–67, n. 2 (7th Cir. 1972); *United States v. DuShane,* 435 F.2d 187, 190 (2d Cir. 1970).

standard of proof that the government must meet, however, has not been considered heretofore, but there are analogies. For example, in federal criminal trials the government may rely on the presumption of sanity until the "defense" of insanity has been raised. Then it must prove a defendant's mental capacity beyond a reasonable doubt.[23] A holding that after raising the issue of the invalidity of a prior conviction the defendant had to convince the trier of fact of such invalidity either by preponderance of the evidence or beyond a reasonable doubt, would be a significant departure from settled principles of federal criminal law. There is no evidence that Congress intended such a new departure in these two statutory provisions.

Since in this case the government chose to rest its case without any effort to establish the validity of the state court conviction on which it relied, the validity having properly been put in issue, the motion for a judgment of acquittal should have been granted.[24] (Footnotes in quoted text renumbered and printed in margin).

For the reasons stated above, I would reverse the judgment of conviction.

23. *E. g., Government of Virgin Islands v. Bellott,* 495 F.2d 1393 (3d Cir. 1974). *See also United States v. Allegrucci,* 258 F.2d 70 (3d Cir. 1958) (unexplained possession of recently stolen property); *United States v. Barrasso,* 267 F.2d 908 (3d Cir. 1959) (alibi defense); *United States v. Marcus,* 166 F.2d 497 (3d Cir. 1948) (alibi defense).

24. 28 U.S.C. § 2106. *See Sapir v. United States,* 348 U.S. 373, 374, 75 S.Ct. 422, 99 L.Ed. 426 (1955) (Douglas, J., concurring); *United States v. Alvarez,* 519 F.2d 1036, 1049 (3d Cir. 1975).